THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLINTON LEFLER, Defendant-Appellant.

Fifth District    No. 5—95—0331

Opinion filed January 22, 1998.

306

Daniel M. Kirwin and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten,

Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KUEHN delivered the opinion of the court:

This case features the mark of Cain and questions whether counsel was able.

On the night of November 5, 1994, someone broke into the home of James Stice and Melissa Hassen, rifled through their belongings, and stacked at the front door what he wanted to steal. The intruder rummaged through the house without disturbing anyone's sleep, until he entered the bedroom. When he did, Stice and Hassen awoke. They immediately realized that they were not alone, but they feigned unawareness of the intruder's presence. They lay there, uncertain of what to do about the silent silhouette crouched motionless at their bedside.

After a lengthy and anxious pause, Hassen decided to get up. As she rose from the bed, the stranger bolted from the room. Stice immediately gave chase. He chased the would-be thief out the door, across the street, and into the neighboring darkness. Whoever the intruder was, he escaped.

While Stice chased the intruder, Hassen phoned the police, who immediately responded. Within moments of the break-in, police conducted a search of the area and found defendant. They detained him and summoned Stice. Stice positively identified defendant as the man flushed from his bedroom moments earlier. The defendant was taken to jail.

After defendant's removal from the area, Officer Michael Sabalo and police dog Cain arrived at the scene of the crime. Cain tracked a path from the home's front door to a point a few blocks away. Cain tracked no farther than the area of defendant's arrest.

Defendant stood trial. Stice and Hassen appeared and positively identified defendant as the intruder. Sabalo appeared and described how Cain tracked defendant's path to the point of defendant's arrest. A Madison County jury found defendant guilty of residential burglary. He was sentenced to prison for 12 years.

On appeal, defendant raises Cain. He argues that the admission into evidence of Cain's tracking exploits constitutes plain error. He insists that the admission of bloodhound evidence singularly compels reversal.

Alternatively, he inveighs against his lawyer's performance. He argues that the legal help he received fell below that measure of assistance that the constitution contemplates. He urges that incompetent lawyering led to an unreliable result. See U.S. Const., amend.

VI; *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984).

We must address the question of whether the admission of dog-tracking evidence constitutes plain error that calls for reversal.

■ Illinois holds to the proposition that "testimony as to the trailing of either a man or animal by a blood-hound should never be admitted in evidence in any case." *People v. Pfanschmidt*, 262 Ill. 411, 461, 104 N.E. 804, 823 (1914). This evidentiary rule has existed without qualification for nearly a century. In fact, it was reaffirmed shortly before this trial began, in a case of considerable notoriety. In reversing the conviction of Rolando Cruz, our supreme court wrote, "We continue to adhere to the principle that bloodhound evidence is inadmissible to establish any factual proposition in a criminal proceeding in Illinois." *People v. Cruz*, 162 Ill. 2d 314, 369-70, 643 N.E.2d 636, 662 (1994).

The State initially concedes that "bloodhound evidence" is inadmissible. It suggests, however, that Cain's performance is not prohibited by the "bloodhound evidence" prohibition. The State tenders the novel approach that "bloodhound evidence" is limited to bloodhounds. It urges that the rule's evidentiary ban is not intended to apply to German shepherds, particularly highly educated German shepherds like Cain. Cain matriculated to and graduated from the St. Louis Police Department Canine Training Academy.

The value of an academy-trained police dog is beyond dispute and not in question here, nor is the intelligence and physical prowess that make German shepherds the breed of choice for such duty. Whether the trailing or tracking is performed by an academy-trained German shepherd or the less sophisticated bloodhound, the evidence's underlying fallibility remains the same. The bar against "bloodhound evidence" addresses a class of evidence innate in its unreliability and potential for prejudice. *Cruz*, 162 Ill. 2d at 370, 643 N.E.2d at 662.

Dog-tracking evidence relies on an instinctive power incapable of human decipher. This is true whether the track utilizes a bloodhound's pure instincts or a German shepherd's instincts refined by academy training. An enigma remains after any breed's tracking performance. No one really knows, nor can they define, how or why a dog performs in any specific way on any specific occasion.

Illinois is not willing to accept the reliability of the inference drawn from Cain's deeds in this case. The smell of defendant may have driven Cain's course. Then again, Cain may have been chasing an alley cat's scent. It was error to admit Sabalo's testimony about Cain's tracking exploits.

■ The authority prohibiting dog-tracking evidence was never raised or mentioned. The only effort to bar Sabalo's testimony was a challenge to Sabalo's credentials as an expert on the subject. When counsel fails to raise a timely proper objection, counsel forfeits the right to later complain. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). When counsel further fails to raise trial error in a posttrial motion, counsel forfeits a right to the error's review. *Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130.

This case involves the admission of a class of evidence deemed too unreliable to prove any factual proposition in an Illinois criminal case. However, its admission is now reviewable only as plain error. If substantial rights are not affected, counsel's omissions forfeit the right to correct the error. 134 Ill. 2d R. 615.

The plain error doctrine is appropriately invoked when the evidence is closely balanced or when the error is so fundamental that it, and it alone, denies a fair trial. *People v. Banks*, 161 Ill. 2d 119, 143, 641 N.E.2d 331, 341 (1994). Neither element exists here.

The State presents the testimony of two credible eyewitnesses who positively identify the defendant as the late-night intruder. Other evidence credits those identifications. Defendant crouched motionless, a few feet from both witnesses, for a lengthy period of time. During this period, various sources of light enabled close-range observation of defendant's characteristics. Both witnesses had ample opportunity to observe who defendant was. They accurately described defendant's age, hair, and clothing before he was discovered by the police. Indeed, defendant neatly fit the person for whom the police were told to search. Defendant was found in a residential neighborhood at 3:30 in the morning. He did not live in the neighborhood and offered no reason for being there. It was only moments after Stice had chased a man of similar age, sporting similar shoulder-length black hair and wearing similar clothing, from his home. Finally, when the police summoned Stice just moments after his lengthy observation of the culprit, Stice identified defendant.

The core evidence in this case, two virtually unimpeached identifications of defendant, greatly reduces the possibility that Sabalo's testimony swayed the balance of thinking on a road to verdict. The core evidence's strength, corroborated by defendant's inexplicable presence in the area and his immediate identification, diminishes the importance of the dog-tracking evidence. Its admission, standing alone, fails to present so fundamental an error as to deprive defendant of a fair trial. The plain error doctrine provides refuge from an issue's forfeiture only where the unpreserved error is substantial. See *People v. Moore*, 279 Ill. App. 3d 152, 663 N.E.2d 490 (1996).

Next, we decide whether counsel's performance was constitutionally infirm.

■ Generally, defense counsel are presumed to pursue sound trial strategies. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065. The presumptive soundness of their performance gives way to a finding of representation's deficiency only where no reasonably effective criminal defense attorney, confronting trial's circumstances, would engage in similar conduct. *People v. Faulkner*, 292 Ill. App. 3d 391, 394, 686 N.E.2d 379, 382 (1997). The constitution's guarantee of "assistance of counsel" calls for "reasonably effective assistance." *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Criminal defense lawyers must assist defendants in a way that the constitution's guarantee to "assistance of counsel" contemplates. The constitution contemplates assistance that engages evidentiary rules to shield an accused from a decision based on unreliable evidence. *Moore*, 279 Ill. App. 3d at 159, 663 N.E.2d at 496. It contemplates assistance that appreciates and understands legal principles applicable to the case. *Faulkner*, 292 Ill. App. 3d at 394, 686 N.E.2d at 382. It contemplates assistance ready to provide adversarial check to a prosecutor's excessive endeavors. *Moore*, 279 Ill. App. 3d at 158-59, 663 N.E.2d at 496. In short, the constitution contemplates more help from counsel than this defendant received.

■ Here, the march to verdict engages a parade of unconstrained errors that defense counsel witnesses from the sidelines as a silent spectator. The prosecutor's opening statement employs argument, his direct examination repeatedly shapes testimony with leading questions, and on several occasions, he elicits improper hearsay evidence. The record is replete with unchecked violations of established evidentiary rules.

We need not belabor all of the omissions raised in defendant's brief. With the exception of the claim that counsel failed to pursue the suppression of the identification, the State proffers little in the way of a defense of counsel's performance. We agree with the State that the show-up identification was proper police procedure under the circumstances and no inference of deficiency can be drawn from counsel's lack of effort to suppress the identifications.

A brief passage from Sabalo's testimony, however, exemplifies an abstruse adversarial silence that marks these proceedings. As previously noted, proper objection would have prevented Sabalo's testimony in its entirety. See *Cruz*, 162 Ill. 2d at 370, 643 N.E.2d at 662. Beyond such failure, counsel allows the testimony to ensue in a rather remarkable fashion. It exceeds anything admitted in those

jurisdictions that deem dog-tracking evidence reliable. Sabalo critiques Cain's performance:

"Q. How did Cain do?
A. Extremely well.
Q. Why do you say that?

* * *

A. On this occasion he never raised his head up. His head was completely down, his nose was probably one or two inches off the ground the whole time. And he pulled extremely hard and continuously.

* * *

Q. Did the dog end up finding anybody or stopping?
A. He didn't find a subject or a suspect. He got to Manning, which is approximately a block and a half, two blocks away. He went half way down Manning, and he just stopped. *And he is looking around at me like, okay.* Usually when he gets to an area where the track has ended, especially on a training track, there is a reward \*\*\*. *He is looking at me to find out, hey, there is nothing here, and I know I tracked something here.*

* * *

Q. Did the dog show any confusion or hesitation whatsoever?
A. None whatsoever.
Q. Okay. And what did that indicate to you?
A. This was actually one of his best tracks he had done."
(Emphasis added.)

It is difficult to discern the strategy underlying counsel's silent observation of Sabalo's translation of a German shepherd's look into the spoken word, particularly where that gaze spoke to Sabalo out of court and assured the jury of Cain's confidence in his own tracking ability. Further, counsel accepts without challenge Sabalo's ability to observe Cain's demeanor and from it weigh the comparative strength of the occasion's performance. Sabalo removes confusion and hesitation from Cain's manner and uses his perception of its absence to opine that Cain had a peak day.

Counsel was apparently at a loss, unaware of what a prosecutor can properly do or legitimately prove. A reasonably effective attorney would never have tolerated the admission of this evidence. In spite of the strong presumption favoring professional assistance, counsel's performance here falls below objective reasonableness.

■ To succeed on a sixth amendment claim of ineffective assistance of counsel, defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. A reasonable probability

means a probability sufficient to undermine confidence in trial's outcome. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

The *Strickland-Albanese* prejudice prong precludes relief based solely upon an attorney's substandard performance. *Moore*, 279 Ill. App. 3d at 159, 663 N.E.2d at 496. Our task is to measure an inferior performance against its potential effect on trial's outcome. Therefore, even when counsel's mistakes are egregious, we are required to examine them in the context of all the case's evidence to determine whether they create a reasonable probability of a different result. *Moore*, 279 Ill. App. 3d at 159, 663 N.E.2d at 496.

We stress that defendant's burden is not to show that a different verdict was likely in the absence of counsel's shortcomings. "[The] touchstone *** is a 'reasonable probability' of a different result, and the adjective is important." (Emphasis omitted.) *Moore*, 279 Ill. App. 3d at 161, 663 N.E.2d at 497, quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 131 L. Ed. 2d 490, 506, 115 S. Ct. 1555, 1566 (1995). The question is not whether the defendant would more likely than not have received a different result without the professional errors of counsel but whether, with their presence, he received a fair trial. In this context, a fair trial is understood as a trial resulting in a verdict worthy of confidence. *Moore*, 279 Ill. App. 3d at 161-62, 663 N.E.2d at 498.

Our inquiry thus calls for more than a mechanical discount of the evidence improperly admitted to determine if other unaffected evidence sufficient to convict remains. Rather, we must evaluate all of the evidence presented at trial and decide whether it is reasonable to conclude that a different result was plausible in the absence of the deficient representation received.

■ Having examined the proceedings in their entirety, we are satisfied that this verdict is reliable and that substandard representation did not produce unjust results. A different outcome absent counsel's deficient performance is, at best, an extremely remote possibility. The likelihood of a different result is simply not a reasonable likelihood.

As previously noted, the core evidence in this case stood virtually unimpeached. In addition, the circumstances of defendant's arrest and immediate identification at the crime scene offer a compelling corroboration of the identification testimony's accuracy.

The State's argument notwithstanding, we recognize the harm defendant incurred by the unchallenged and improper admission of Cain's tracking exploits. Such evidence produced an inference that Cain tracked defendant's scent over his path of flight from the home

to the point of arrest and, as such, allowed a conclusion that defendant's presence at the crime scene was accounted for, independent of the two eyewitnesses and their identifications. However, the harm is dissipated by the strength of those identifications and other evidence that corroborated them.

The other unchallenged errors, demonstrative of counsel's shortcomings, produced little cumulative harm to effect the trial's outcome. Moreover, the evidence elicited by improper technique or with inadequate foundation was not otherwise inadmissible. A timely objection would not necessarily have precluded the evidence's substance from being heard, provided a proper method for its introduction was employed.

In a perfect world, every defendant would receive the type of lawyering that assists in his defense. Such assistance would fall within that wide range of professional expertise and skill that comprises competence. In our world, however, a defendant can receive less assistance of counsel than the law actually anticipates, yet find no remedy. The sixth amendment right to counsel vindicates a poor legal performance only where that performance undermines confidence in trial's outcome. Where we cannot discern a reasonable probability that trial's outcome could change in the absence of counsel's performance, we cannot afford defendant the relief he seeks because of that performance.

Accordingly, based upon the foregoing reasons, we affirm.

Affirmed.

GOLDENHERSH and MAAG, JJ., concur.