THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAURICE DODSON, Defendant-Appellant.

Fifth District    No. 5—00—0020

Opinion filed June 6, 2002.

WELCH, J., dissenting.

Daniel M. Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Ed Deters, State's Attorney, of Effingham (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KUEHN delivered the opinion of the court:

This case arrives for review after a trial that lacked many of the features normally associated with trials conducted under our adversary system of justice. We confront a case where defense counsel promoted, as the process to judgment, a jury waiver and the use of a written stipulation prepared by the prosecutor. Counsel chose to adjudicate the question of her client's guilt or innocence by way of a stipulated bench trial, conduct that raises the ultimate question for our review. Can a defense lawyer forego an adversarial test of the State's case and ease the path to conviction on a plea of not guilty, in the hope that an absence of a true challenge to the State's case might curry the trial judge's favor and, thereby, result in the imposition of lesser punishment?

Whether counsel can utilize stipulated bench trials in order to preserve adverse rulings for appellate review or whether a lack of a contest in lieu of a guilty plea can be utilized as a means to procure concessions from the State are two questions not at issue. Here, there was no adverse ruling to appeal, and the State had not agreed to recommend lighter punishment in return for a surrender to its evidence.

Maurice Dodson appeals his armed robbery conviction. The circumstances set forth in the written stipulation, and agreed upon as a means to a decision, make it fairly clear that he committed the armed robbery that underlies this case. The following facts are set forth in the State-drafted evidentiary stipulation.

On July 22, 1999, in broad daylight, a man who matched Dodson's race and frame, wearing sunglasses and a purple cap, entered an Effingham, Illinois, liquor store called Sporty's Beverage Connection and robbed the clerk at gunpoint. A large amount of cash was taken. An eyewitness saw the same man, gun in hand, run hastily into a room located on the second floor of a Best Inns hotel, a short distance from the crime scene.

The Effingham police arrived at the hotel just moments after the armed robbery occurred. They learned from the hotel clerk that a man who fit the robber's description was staying in room 234. The police called the room and Dodson answered. The police ordered Dodson to exit the room with his hands up. When he complied, it was immediately apparent that the officers had caught him with his pants down. Dodson stood naked, save his underwear.

In the search that immediately ensued, police found torn receipts and checks from Sporty's, floating in the toilet bowl. They found a pellet handgun shoved under the air conditioner. Sunglasses were found behind the television set, and a purple cap was found hidden behind a telephone book. The police found most everything related to the crime, except the large amount of cash reportedly taken in the robbery. When Dodson was later booked into jail, the police found $608 hidden in his underwear.

According to the facts set forth in the stipulation, the prosecution seemed to be well-armed with evidence to support Dodson's guilt. The State appeared poised for a trial that would result in an easy conviction, no matter how hard a criminal defense lawyer would strive to defeat that goal.[1]

Dodson could not afford to hire a criminal defense lawyer. Since he

---

[1]Our colleague in dissent, taken by the strength of the State's evidence, ruminates over the quandary that counsel faced. He concludes that since certain defense efforts were likely to prove unsuccessful, counsel's effort to mitigate the sentence was a sound and a logical course.

There are, without question, certain cases where counsel's advocacy skills are put to best use by convincing a reluctant client that it is in his best interest to forego a test of the State's case and to enter a guilty plea, thereby demonstrating the kind of acceptance of responsibility and contrition that enable counsel to seek leniency when an appropriate punishment is determined. In those cases where championing a defense evolves into a strategy focused exclusively upon the mitigation of sentence, that strategy's soundness must necessarily depend upon whether lesser punishment is a potential by-product of the strategy. Here, counsel's client obviously insisted upon his absolute right to maintain a plea of not guilty, despite counsel's desire to procure favor for surrendering to the State's case without any true contest. Since Dodson

was entitled to have a trained and licensed professional to champion his defense, the trial judge appointed the public defender to represent him.

On October 13, 1999, Dodson's case was called for trial. He appeared with counsel. She advised him to waive a jury and proceed to a trial before the judge. In addition to this advice, she promoted a waiver of the right to confront the State's witnesses and the right to present evidence in his own behalf. Counsel assisted Dodson in this endeavor by signing a written stipulation prepared by the prosecutor.

The stipulation set forth the State's version of what the evidence would establish if witnesses were actually called to testify and exhibits were actually admitted. Naturally, it presented the State's case in a light most favorable to the State. Counsel conceded the State's ability to present it in that fashion. She agreed to a recital of unchallenged proofs, incapable of being viewed with incredulity. There was nothing

stood upon his plea of not guilty, we are left to wonder what kind of mitigation counsel sought through the concession of her client's guilt. Contrary to the implication that underlies the dissent, counsel's concession of guilt, through the waiver of a jury and a stipulation to proofs, is not a step that palliates the defendant's guilt or in any way offers reason to impose lesser punishment.

While it is true that some cases offer counsel little to work with, whatever counsel does on behalf of a client must be objectively reasonable. An acquittal in the face of overwhelming evidence is a rare occurrence. However, it does happen. When it does, it is usually the result of unexpected and unpredictable trial events that stem from vigorous adversarial testing of the State's evidence. Our colleague's reference to the O.J. Simpson trial proves instructive. Before the "dream team" began to question the State's evidence, before that evidence met with adversarial testing, it was almost universally accepted that O.J. Simpson would be convicted. At that point, there had been no in-court exhibition of how a glove that once clothed a killer's hand could not be stretched to a point of clothing fit to grace Simpson's own manus.

Of course, at the trial's outset, the State possessed seemingly irrefutable blood-exchange DNA matches, coupled with a host of other reasons that made O.J. Simpson the clear and obvious suspect. The rhetorical questions posed by the dissent could have been raised to support the concession of Simpson's guilt, had the "dream team" decided to give up, waive the jury, and allow Judge Ito to decide guilt or innocence based upon an evidentiary stipulation crafted by Chris Darden and Marcia Clark.

In many cases an adversarial test of the State's case will not result in events that can be used to argue a reasonable doubt over a client's guilt. Nonetheless, an acquittal will never occur in the absence of a contest. Thus, if defense counsel is going to give up an adversarial test of the State's case, counsel had better have a sound reason for doing so.

in the stipulation that offered a rational trier of fact reason to discredit any of the State's evidence.

The stipulation's content compelled the inescapable conclusion that Dodson had committed the armed robbery with which he had been charged. Submitting the question of guilt or innocence to a judge, based upon its content, made the trial's outcome a virtual certainty.

The judge read the stipulation, he heard comments from the prosecutor and the public defender, and Dodson's trial was over. The judge made a finding instantly. To no one's surprise, Dodson was found guilty.

During the abbreviated trial proceedings, the judge asked Dodson's lawyer to comment upon the evidence. Rather than speak to the issue of guilt or innocence, which she must have considered to be a foregone conclusion based upon the stipulation that she had signed, counsel confined her comments to matters that diminished the severity of the crime. Rather than challenge the existence of her client's guilt, counsel made a brief effort to mitigate it. She advised the judge that the weapon seized by the police was not a firearm, but a pellet gun. She further explained that the pellet gun was not loaded and that the armed robbery victim was not hurt.

Her client now serves a 20-year prison term for armed robbery, the punishment imposed as a result of the guilty finding.

The record discloses an absence of any pretrial motions in an effort to exclude or limit the State's evidence. The judge was never called upon to rule on any evidentiary matters prior to the trial. The record further reveals that the State proceeded without a concession in return for the surrender of any real challenge to its case. There was nothing promised in exchange for the ease with which the stipulated bench trial allowed the State to achieve its prosecutorial goal. Since the guilty finding was the only adverse ruling made in this case, counsel was limited in what she could raise in a posttrial motion; however, no posttrial motion was filed. Thus, nothing was preserved for our review—nothing, that is, but the quality of counsel's performance in championing the defense.

Dodson's new lawyer argues that the promotion of a stipulated bench trial failed to advance any interest other than the State's interest in obtaining an easy conviction, unencumbered by any commitment offered in return for Dodson's surrender to, and acceptance of, the trial's inevitable outcome.

The sole issue on appeal is whether counsel's conduct lacked the advocacy necessary to fulfill the adversarial role contemplated by the United States Constitution's promise of professional legal assistance. In effect, we are asked to overturn Dodson's conviction because the at-

torney appointed to provide legal assistance performed so poorly that the assistance received was worse than no help at all.

■ We usually afford considerable deference to an attorney's performance on behalf of an accused. In recognition of the fact that attorney skills and strategies will differ widely, we "indulge a strong presumption that counsel's conduct falls within [a] wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065 (1984). When counsel's performance clearly falls below an objective standard of reasonableness, substandard lawyering will not constitute grounds for relief unless the person who suffered it can show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; see also *People v. Lefler*, 294 Ill. App. 3d 305, 311, 689 N.E.2d 1209, 1214 (1998).

■ This case does not present a common claim for relief from poor lawyering. Here, we are presented a circumstance that calls for a different standard of review. At the same time that the Supreme Court decided *Strickland v. Washington* and set forth its standard for the review of sixth amendment claims, it heard a companion case. In that case, the Supreme Court cautioned that the sixth amendment requires, at a bare minimum, that defense counsel act as a true advocate for the accused. Where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *United States v. Cronic*, 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047 (1984). The Court explained:

"[T]he adversarial process protected by the Sixth Amendment requires that the accused have 'counsel acting in the role of an advocate.' [Citation.] The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated." *Cronic*, 466 U.S. at 656-57, 80 L. Ed. 2d at 666, 104 S. Ct. at 2045-46.

This is not a case where counsel made a series of demonstrable mistakes during the course of a truly adversarial criminal trial. Here, we must deal with a trial that lacked any meaningful adversarial test of the prosecution's case. The decision to promote a bench trial and

the decision to sign the State-drafted stipulation virtually ensured a conviction and spared the prosecution those hardships that usually accompany the existence of a trained and skilled adversary trying to defeat its objectives. The stipulated bench trial provided a process to judgment that lost its character as a confrontation between adversaries. The "crucible of meaningful adversarial testing" (*Cronic*, 466 U.S. at 656, 80 L. Ed. 2d at 666, 104 S. Ct. at 2045) gave way to a proceeding that assumed the posture of capitulation. This trial was the functional equivalent of a guilty plea without the procedural due process safeguards required by *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969), and by Supreme Court Rule 402 (177 Ill. 2d R. 402).[2]

The State urges us to hold that defense counsel performed in a manner consistent with the constitutional guarantee to the effective assistance of counsel. Its arguments diverge over what defense counsel was trying to do. Initially, the State maintains that defense counsel did not concede the defendant's guilt by merely stipulating to the existence of the State's evidence. The State reasons that the trial judge still had to find that the State's evidence established guilt beyond a reasonable doubt. The State argues that it follows that counsel did not "stipulate away" her client's guilt.

While it is true that counsel did not expressly concede her client's guilt by stipulating to the existence of the State's evidence, it is also true that a guilty finding was the predictable, and inevitable, outcome of that decision. The State's defense of counsel's conduct implicitly assumes that counsel employed a stipulated bench trial with the hope of winning an acquittal. This seems untenable. The written stipulation left no room for an acquittal, provided that a rational and honest judge was relied upon to decide whether its content established guilt.

The State's first argument obscures the real question. Since this proceeding took place upon a plea of not guilty, we are in search of the advocacy behind counsel's decision to forego an adversarial test of the

---

[2]Although the dissent fears that this decision may foreclose the use of open guilty pleas as a legitimate defense strategy, the fully admonished open guilty plea remains a sound method to procure a more lenient punishment. This is not a case where the accused waived all of his rights, confessed his sins, and engaged in an act of contrition. The dissent seems to think that the defendant engaged in conduct that the law recognizes as mitigating. While the proceedings constituted the functional equivalent of a guilty plea, the defendant maintained a plea of not guilty and asked that a trier of fact weigh the evidence and decide his fate. This is not conduct that the law recognizes with favor as an acceptance of responsibility or contrition, initial steps on the path to redemption and rehabilitation.

State's case. We will assume, for the sake of the State's argument, that counsel was genuinely trying to win an acquittal by her pursuit of the method employed. As overwhelming a case as the State-drafted stipulation conveyed, we will approach counsel's conduct as though she believed that the stipulation's content harbored a doubt that could result in an acquittal.

If counsel thought that she could win an acquittal without any real effort, she was wrong. Her client was convicted and sent to prison for 20 years. This occurred after she deployed a process to judgment that dispensed with an opening statement, the cross-examination of the State's witnesses, the presentation of defense witnesses, and a closing argument. In seeking a summary acquittal, in lieu of one obtained after some work, she tendered the State's evidence in a light most favorable to the State and failed to direct the judge's attention to the reasonable doubt that existed within the facts conveyed in the stipulation. She did not bother to question her client's guilt when asked to do so. Sound trial strategy should be made of sterner stuff. *People v. Moore*, 279 Ill. App. 3d 152, 159, 663 N.E.2d 490, 496 (1996).

We are mindful of the fact that the State might urge a review of these professional errors under the *Strickland v. Washington* standard. However, we are unwilling to equate counsel's effort to obtain a summary acquittal, if that was truly her intent, with the kind of test that allows for the conclusion that the State's evidence survived the "crucible of meaningful adversarial testing." *Cronic*, 466 U.S. at 656, 80 L. Ed. 2d at 666, 104 S. Ct. at 2045. Criminal defense lawyers who submit their clients' fate to a judge based upon an evidentiary stipulation drafted by a prosecutor, who is intent upon obtaining a conviction, need to have a better reason for doing so than the hope of procuring an acquittal.

The State's backup position shifts ground entirely and readily assumes that defense counsel conceded her client's guilt. This argument is more in tune with what the record reflects. Counsel eased the path to conviction and, in the process, seemed intent on circumstances that mitigated guilt. The State argues that concession was sound trial strategy. It maintains that conceding the defendant's guilt was a reasoned and a meaningful effort to procure leniency from the judge. Our dissenting colleague agrees with this position. He is impressed with how capitulation upon a plea of not guilty, designed to cull a judge's appreciation and favor, seemed to succeed in helping this defendant. In support of the conclusion that counsel was effective, he points out that after finding the defendant guilty, the judge refrained from imposing the maximum punishment available and only imposed a sentence that condemned the defendant to imprisonment for the

better portion of life's expectancy. Although defense counsel did not mention her client's capitulation at sentencing and never placed it in issue as a mitigating factor (which of course it was not), and despite the absence of any statement from the sentencing judge that it was a factor that he considered in arriving at a sentence, we are told that trial counsel's strategy of surrender worked in spectacular fashion.

This view underscores the problem with these proceedings. Initially, we note that the circumstances that might have mitigated punishment existed regardless of how counsel defended against a finding of guilt. Dodson's guilt did not need to be conceded in order to present, prior to sentencing, the two existing mitigating circumstances. More important, the argument ignores the fact that counsel's client maintained a plea of not guilty. " '[T]he constitutional right of a criminal defendant to plead "not guilty" *** *entails the obligation of his attorney to structure the trial of the case around his client's plea.* *** In those rare cases where counsel advises his client that the latter's guilt should be admitted, the client's knowing consent to such trial strategy must appear outside the presence of the jury on the trial record in the manner consistent with *Boykin*.' " (Emphasis added.) *People v. Hattery*, 109 Ill. 2d 449, 463, 488 N.E.2d 513, 518 (1985), quoting *Wiley v. Sowders*, 647 F.2d 642, 650 (6th Cir. 1981). In Illinois, a guilty plea must be supported by a record that satisfies Supreme Court Rule 402 (177 Ill. 2d R. 402).

Here, Dodson was asked whether he wished to waive a jury and proceed in accordance with his attorney's wishes. He was never admonished about the rights that he was giving up, something mandated by Rule 402 and the United States Constitution in cases where a guilty plea is tendered. Nothing in the record demonstrates that he knowingly and intelligently waived the right to a trial by jury, the right to confront witnesses, or the right to subpoena witnesses on his own behalf, mindful of the potential penalties that accompanied the surrender of those rights. He was only asked whether he wished to waive a jury trial and proceed in the manner recommended by his attorney.

Dodson proceeded to a trial before a judge only, upon an evidentiary stipulation drafted by his prosecutor. That prosecutor conceded nothing in return for the easy and certain result that such a trial would produce. Dodson proceeded to a certain determination of his guilt without the benefits that accompany a plea of guilty. Without a guilty plea, he was not entitled to the consideration that flows from the affirmative acceptance of responsibility and a showing of contrition over what he had done. Both are legitimate factors that accompany a plea of guilty and potentially mitigate punishment.

We are at a loss to find the advocacy that accompanied the chosen process to a guilty finding in this case. Dodson's lawyer shirked her obligation to structure the trial of Dodson's case around his plea of not guilty. There simply was not any reason, consistent with advocacy, to proceed without a contest.

The State, joined by our dissenter, would have us find that counsel, faced with a client who insists on maintaining a plea of not guilty, can legitimately concede that client's guilt without some reciprocal sacrifice from the State or some other strategy apart from the hope of procuring leniency. See *Hattery*, 109 Ill. 2d at 464, 488 N.E.2d at 518. This approach assumes that defense counsel's concession of guilt, as opposed to a defendant's admission of guilt, accrues some benefit that allows it to be called a strategy rather than an outright capitulation to the State's aims. The State surrendered nothing in exchange for counsel's concession of guilt. It reserved its right to recommend the maximum 30-year prison sentence the law allowed, and that is what it did. Dodson did not waive any of the structural protections or attorney obligations that accompany a not-guilty plea. His course of allowing the State to prove guilt without a legitimate contest won no points for the acceptance of responsibility for his conduct or for an act indicative of sincere contrition over his criminality. There was no reason to expect favor from the sentencing judge. He had no reason to find and, in fact, did not find that the defendant deserved less punishment because his lawyer chose not to fashion a defense around his not-guilty plea or because he agreed to waive a jury trial and an adversarial test of the State's proofs.

The dissent's concern that our reasoning forecloses the future use of a not-guilty plea coupled with a stipulated bench trial is misplaced. A defense counsel whose client refuses to admit guilt but whose client still wants to procure some concession from the State in return for surrender to a certain finding of guilt may still employ the stipulated bench trial to achieve what, in essence, is the equivalent of a negotiated guilty plea. There is noticeable strategy intended to mitigate punishment in such a course. The preservation of pretrial rulings for review, given the waiver that would occur upon a guilty plea, could also justify such a procedure.

Moreover, our reasoning will not foreclose the future use of an open plea of guilty as a legitimate defense, particularly where an adverse trial outcome is predictable. Contrition is the first step on the path to rehabilitation, and the offender who is willing to openly admit his guilt and accept responsibility for his misconduct has engaged in an act that the law recognizes as a means to the mitigation of punishment.

■ Counsel simply does not fulfill the constitutionally contemplated adversarial role by facilitating a client's conviction on a plea of not guilty. There may be sound reasons for a stipulated bench trial in lieu of a guilty plea, but a "hope of leniency," the reason postured by the State, is not enough to validate giving up and giving in. Capitulation, on a song and a prayer that making it easy for the State will somehow accrue to a client's benefit, is not strategy. It is merely a rationalization for failing to take on a hard case and perform in a manner in which criminal defense attorneys are expected to perform. Since there was absolutely no reason to give up without a contest, absent some concession from the State in return, counsel abdicated her role as an advocate. Accordingly, Dodson did not receive the kind of professional assistance that the sixth amendment right to counsel contemplates. Absent a determination of guilt through a meaningful adversarial process, a conviction cannot stand. We reverse the armed robbery conviction and remand for a new trial.

Reversed; cause remanded.

GOLDENHERSH, J., concurs.

JUSTICE WELCH, dissenting:
Sometimes you have a case where "you don't have a glove that won't fit." That is the case that defense counsel had here. Defense counsel moved for discovery, requested the production of police reports, and subpoenaed police notes. What did counsel find? Everything discovered pointed to defendant's guilt.

Could counsel attack the search of defendant's room? Yes, but the attack would probably prove unsuccessful because the signed consent to search appeared to be in order.

With the most certain possibility that defendant would be convicted, what can defense counsel do? At that point, mitigate the sentence.

Here we have a defendant who by his own admission is a crack dealer with four prior robbery convictions, one prior theft conviction, and two prior burglary convictions. He has been incarcerated much of his adult life and, as a result, has considerable knowledge of the criminal justice system. He has now graduated to armed robbery, a Class X felony. Not much to work with.

What is counsel to do? Counsel's strategy would be to show that the weapon was merely a pellet gun, that no one was hurt, and that the defendant cooperated when arrested and even gave his written consent to search his room. All this information would come out before

198

the trial court in the form of a stipulation. The results were spectacular: defendant received a prison sentence of only 20 years when he could have received 30 years.

I believe that the majority's reasoning forecloses a not-guilty plea coupled with a stipulated bench trial as a defense option. This I cannot condone. The stipulation marries the State to the facts. It avoids the inherent waivers of a guilty plea. It works to ensure that the State does not get everything in the stipulation so that it founders when carrying its heavy burden of proof. It preserves any vested but undiscovered rights the defendant possesses. I call this effective assistance of counsel. In sum, I believe that defense counsel in this case constitutionally served her client.

I also believe that under the majority's reasoning the majority may foreclose the open guilty plea as a defense option: If counsel advises a client to plead guilty and works to mitigate the sentence, when a conviction is likely and the State refuses to bargain, then counsel has not properly assumed an adversarial role and has denied his or her client effective assistance.

For these reasons, I respectfully dissent.