NOTICE

Decision filed 11/06/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220551-U

NO. 5-22-0551

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 21-CF-1289 |
| | ) | |
| DERRIAL D. WEBSTER, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1 *Held*: We reverse the defendant's conviction and sentence for the offense of armed habitual criminal, and remand for further proceedings, because we agree with the defendant that he did not receive the effective assistance of counsel where his counsel presented, as his sole defense, a meritless legal theory that was contrary to existing precedent that was binding on the circuit court.

¶ 2 The defendant, Derrial D. Webster, appeals his conviction and sentence, by the circuit court of Champaign County, for the offense of armed habitual criminal. For the reasons that follow, we reverse his conviction and sentence, and remand for further proceedings.

¶ 3 I. BACKGROUND

¶ 4 The facts necessary to our disposition of this appeal are as follows. On October 25, 2021, the defendant was charged, by information, with, *inter alia*, the Class 2 felony offense of unlawful possession of a weapon by a felon on mandatory supervised release (MSR). The information

1

alleged, *inter alia*, that on October 24, 2021, the defendant, who had been convicted previously of the felony offense of armed habitual criminal, "knowingly possessed a firearm, namely [a] Taurus G2C 9mm [h]andgun," and further alleged that "the defendant was on mandatory supervised release or parole at the time of this offense." Also on October 25, 2021, the defendant was charged, by information, with a new count of armed habitual criminal, a Class X felony, based upon the defendant's alleged possession of the handgun. The previous felonies listed on the information, which provided the basis, or predicate, for the new count of armed habitual criminal, were the defendant's alleged convictions in Champaign County cases 2008-CF-2303 and 2008-CF-2304, both of which were Class 1 felony residential burglary cases. The public defender was appointed to represent the defendant on the new charges. Thereafter, the defendant retained private counsel to represent him, and the public defender was discharged.

¶ 5    Over the following months, private counsel made multiple oral motions to continue the case, all of which were granted, with the final motion being granted over the objection of the State, which announced it was ready for trial. On June 22, 2022, the case proceeded to what the defendant's counsel described as an "open plea and a bench trial *** by stipulation." Counsel thereafter clarified that the defendant would be entering an open plea on the charge of unlawful possession of a weapon by a felon on MSR (count II), and that the defendant desired a bench trial on the charge of armed habitual criminal (count I). Counsel added that "a stipulated bench trial is fine because he will stipulate to—in the plea to most of the elements of Count I. His defense in that case is a legal argument, not a factual one."

¶ 6    When asked for her position, counsel for the State stated that she believed "the counts would merge" because "[i]t's one firearm." She added, "But if he wants to plead guilty to one and stipulate to the other one, I *** guess that makes no legal sense, but that's fine." After determining that count I was the greater offense, the circuit court stated "that the logical order would be to do

2

the stipulated bench trial in count I, and if he's found guilty, he could still plead on count II." Thereafter, the defendant appeared with his counsel, at which time the defendant was admonished as to his right to a jury trial, after which he executed a signed written waiver of that right. The circuit court stated that it found that the defendant's waiver was "knowingly, understandingly, and voluntarily made." The circuit court then stated that it understood that the defendant wished, in his bench trial, to give up the right to present, cross-examine, and confront witnesses, and that instead, the circuit court would "decide if you're guilty or not guilty based on an agreement of what the facts are that the lawyers" would present to the court. The defendant stated that he understood, had no questions, and wished to proceed in that manner.

¶ 7 Counsel for the State then presented what the circuit court characterized as "the statement of the agreed facts," which included, *inter alia*, the following: (1) the defendant was the front-seat passenger in a vehicle that was pulled over by authorities for traffic violations; (2) the driver of that vehicle "was deemed to be under the influence of alcohol, and there [were] drugs observed by officers"; (3) accordingly, "officers took the [d]efendant out of the vehicle"; (4) during a pat-down search of the defendant, "officers observed a gun in the [d]efendant's waistband"; (5) a struggle ensued, during which the gun "fell down in [the defendant's] pants" and had to be cut out; (6) the gun thereafter "was identified as a Taurus G2C 9mm handgun"; and (7) "[t]he [d]efendant is a convicted felon, being convicted of residential burglary in 2008-CF-2309 [*sic*], as well as 2008-CF-2304," with both of those convictions being entered on April 21, 2009. With regard to the prior convictions, counsel for the State added that "[t]he State would present the court files at a bench or a jury trial for judicial notice."

¶ 8 When asked if he would "agree that those are the agreed-to facts that the Court [could] consider at the stipulated bench trial," the defendant's counsel answered, "I would." The defendant's counsel then offered, as "[d]efense evidence," the court files showing the previous

3

convictions in 2008-CF-2303 and 2008-CF-2304. The circuit court asked if the defense wished for the court "to take judicial notice of the fact that the priors are for residential burglary," to which defense counsel responded, "And that he received a sentence to the [Illinois] Department of Corrections to be served concurrently in those cases." After the parties declined to present further evidence, they offered argument. Defense counsel argued as follows:

"Your Honor, our defense is not a factual one. The facts are as stated. It is a *** question of law. Did the legislature intend—when he was convicted of those two previous cases in the manner and circumstances of the judgment at the same day, at the same time, does that count as one or two? And our suggestion to the Court is that the legislature would have intended that to count as one. So, it is not two offenses."

¶ 9    The State responded that it believed, based upon the organization and language of the statutes in question, that concurrent sentences, entered on the same date but for separate charges, satisfied the requirements for two prior, or predicate, felony convictions for purposes of an armed habitual criminal charge and conviction. The circuit court first stated that defense counsel made "a powerful argument" in support of his position, but thereafter the circuit court noted that although the prior convictions were for two burglaries that occurred on the same date—December 5, 2008—the burglaries occurred at two separate locations, which meant that, ultimately, "they are separate and distinct offenses." The circuit court further noted that defense counsel's argument was that because the defendant "pled at the same time, it should count as one offense," but the circuit court believed that the State's argument countering the defendant was "well-taken" based upon the organization and language of the statutes. The circuit court thereafter added: "This is an issue of statutory construction. It is a legal argument. I don't think the defense argument's well-taken." At no point did the parties, or the circuit court, discuss—or even mention—any cases interpreting the statutes.

4

¶ 10    Ultimately, the circuit court ruled that "based on the stipulated facts, the defendant did possess the weapon on this particular date," the defendant was "a convicted felon," there were "two prior convictions for residential burglary," and, accordingly, the defendant was "guilty of armed habitual criminal in count I" because the State had "proven that beyond a reasonable doubt." After defense counsel agreed to stipulate that the defendant was on MSR on the date of the offenses, October 24, 2021, the circuit court stated, "I'm gonna show entry of conviction on count II as well, based on the stipulated facts." The circuit court added that because "the convictions would likely merge," the court would enter a sentence on count I only, and in fact the record on appeal indicates that the circuit court ultimately entered a conviction on count I only, rather than on both counts. The matter was set for sentencing, with the defendant given time to file a posttrial motion.

¶ 11    On June 27, 2022, the defendant, by his same retained counsel, filed a posttrial motion in which he asked the circuit court to vacate his conviction as to count I, and in which he argued that he "was not proven guilty beyond a reasonable doubt on Count [I] because his convictions in Champaign County Case Numbers 2008-CF-2303 and 2008-CF-2304 should be counted as one prior conviction, not two as required by the statute." Defense counsel's written motion did not cite any cases in support of counsel's position. On June 28, 2022, the State certified that it had sent "supplemental discovery" to the defendant, consisting of one USB drive containing photos and videos, taken by the University of Illinois police and related to the incident.

¶ 12    On August 19, 2022, a hearing was held on the posttrial motion, with sentencing to follow. Defense counsel stood on his written motion, and the State stood on the arguments it made at the June 22, 2022, trial. Thereafter, the circuit court noted that precedent found by the court did not support the position taken by defense counsel. Accordingly, the circuit court denied the defendant's posttrial motion. Following argument by the parties, and a statement in allocution by

the defendant, the defendant was sentenced to 13 years of imprisonment in the Illinois Department of Corrections, with credit for 300 days served in the county jail prior to sentencing. This appeal was timely filed, also on August 19, 2022. Additional facts will be provided as necessary throughout the remainder of this order.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, the defendant argues, *inter alia*, that he did not receive the effective assistance of counsel in the circuit court. Specifically, the defendant contends on appeal with regard to this issue that his trial counsel "presented a meritless legal argument as [the defendant's] only defense," which he contends deprived him of, *inter alia*, "a meaningful adversarial trial process." He posits that defense counsel's strategy and tactics, which included stipulating to the State's factual basis for the charges, "left the trial court with no choice but to find [the defendant] guilty of" armed habitual criminal, and thereby "resulted in [the defendant] forfeiting his constitutional rights to contest his innocence by a trial and to hold the State to its burden of proof." He points out that defense counsel did not file any substantive pretrial motions, although filing, *e.g.*, a pretrial motion to dismiss would have allowed counsel to test his legal theory with the circuit court prior to trial, without relying upon it as his sole defense, which in turn would have allowed the defendant, had that theory been rejected by the court, to make meaningful choices regarding, *inter alia*, a possible plea agreement or proceeding to a trial on the merits. He further argues that defense counsel was ineffective because "[e]ven cursory research would have" revealed that defense counsel's legal argument did not constitute "a viable defense" to the armed habitual criminal charge.

¶ 15    In support of his position, the defendant first notes that under a traditional ineffective assistance of counsel analysis, a defendant must show both that counsel's performance was deficient, and that the defendant was prejudiced by that deficient performance, and argues why he believes he has met that burden in this case. In the alternative, the defendant notes that in cases in

which counsel's errors are so profound and fundamental as to amount to a complete deprivation of the right to counsel, no showing of prejudice is required, because such errors are structural ones that represent a "complete failure of a functioning adversarial trial process." The defendant presents other alternative arguments as well. With regard to all of his arguments, the relief requested by the defendant is the reversal of his armed habitual criminal conviction and remand for a new trial. He does not contend that a new trial would be barred by principles of double jeopardy and accordingly has forfeited any such claim. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (argument must contain the contentions of the appellant, the reasons therefor, and the citation of authorities; points not argued in an opening brief are forfeited and shall not be raised in the reply brief, in oral argument, or in a petition for a rehearing).

¶ 16    The State responds by contending, *inter alia*, that defense counsel's theory in the circuit court was not wholly without merit, and therefore constituted reasonable trial strategy, rather than deficient performance. In support of this position, the State notes that the circuit court at one point stated that defense counsel had made "a powerful argument" against the armed habitual criminal charge in this case, even though the circuit court ultimately did not agree with that argument. The State further claims that this court, on appeal, is not required to follow the cases that debunked defense counsel's circuit court legal theory. The State also disputes, *inter alia*, the defendant's contention that he has shown he was prejudiced by counsel's purportedly deficient performance in this case.

¶ 17    In reply, the defendant correctly points out, *inter alia*, that although this court, on appeal, is not required to follow precedent from other districts of the Illinois Appellate Court that are contrary to defense counsel's circuit court legal theory, the circuit court, as a lower court, *was* required to follow that binding precedent, and no effort was made by defense counsel to stipulate to the facts for the sole purpose of distinguishing that precedent and preserving the legal issue for

7

appeal. To the contrary, defense counsel put forward his legal theory without citing any legal authority either for or against it, apparently without doing any legal research at all. The defendant also contends that the State "cherry picks" the record when the State argues that the record shows that defense counsel's circuit court legal theory was not wholly without merit.

¶ 18    We agree with the defendant. As the defendant repeatedly notes, defense counsel did not support his legal argument in the circuit court with any citation to authority, either when he initially made the argument at the defendant's trial, or when he made it a second time in his written posttrial motion, upon which he stood at the hearing on that motion. Had defense counsel done even a modicum of research before staking the defendant's entire defense on counsel's theory, counsel would have discovered that there was no precedent—*at all*—in support of his position, and that there was precedent, binding on the circuit court, that directly refuted his position.

¶ 19    In *People v. Patterson*, 2018 IL App (1st) 160610, ¶¶ 13, 23-31, a panel of our colleagues in the First District examined, in a published opinion, the question of whether two convictions entered on the same date can serve as the two predicate convictions required under the armed habitual criminal statute. The *Patterson* court answered this question in the affirmative, rejecting the defendant's argument that "because [the two] convictions were entered on the same day based on plea agreements that were reached on the same day ***, he was convicted only one time of two separate offenses." *Id.* ¶¶ 26, 28-31. The *Patterson* court explicitly held that "[t]he plain language of the [armed habitual criminal] statute does not contain any limiting language regarding the sequence or separate entry of the predicate convictions." *Id.* ¶ 29. Moreover, the court explicitly considered, and rejected, the defendant's argument that the "statute should be construed like certain sentencing provisions of the Unified Code of Corrections to require sequential and separate convictions," because the court did not believe it was appropriate to "look beyond the clear and unambiguous language in the" statute. *Id.* ¶¶ 30-31. The court added that "[b]ecause the legislature

included the limiting language regarding sequential and separate convictions in the above-cited recidivist provisions of the Unified Code of Corrections regarding the sentencing of habitual criminals and Class X offenders and the imposition of extended term sentences," but included no such language in the armed habitual criminal statute, the court was required to "conclude that the legislature intentionally refrained from imposing such a requirement in the" armed habitual criminal statute. *Id.* ¶ 31. The court thereafter held that "[t]he presence of the limiting language in the recidivist provisions of the Unified Code of Corrections and the absence of that language in the [armed habitual criminal] statute establishes that [the] defendant's claim has no arguable basis in the law." *Id.*

¶ 20    As noted above, *Patterson* was a published opinion, which, as the defendant correctly argues in his reply brief, means that the circuit court in this case was required to follow and apply it. See, *e.g.*, *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539-540 (1992) (decision of the appellate court, though not binding on other appellate districts, is binding on the circuit courts throughout the state, unless there are conflicting decisions from various appellate districts and no controlling authority from a particular circuit court's home district, in which case that circuit court may choose between the conflicting decisions). In this case, there exist no conflicting decisions from other districts. Thus, the circuit court had no choice but to follow *Patterson* and reject defense counsel's theory in this case.

¶ 21    With regard to the State's contention that the circuit court's comment that defense counsel made "a powerful argument" demonstrates that defense counsel's argument was not wholly without merit, we do not attach the significance that the State, on appeal, does to the circuit court's comment. As described above, the circuit court made the comment during the defendant's June 22, 2022, stipulated bench trial, and at no point during the discussion of defense counsel's argument at that trial did the parties, or the circuit court, discuss, or even mention, any cases

9

interpreting the statutes in question or addressing the legal merits of defense counsel's argument. Also as mentioned above, no substantive written pretrial motions were filed by defense counsel, and no effort was made by him to stipulate to the facts in this case for the sole purpose of distinguishing the precedent contrary to his position and preserving the legal issue for appeal. To the contrary, defense counsel put forward his legal theory without citing any legal authority either for or against it, apparently without doing any legal research at all. For all of these reasons, there is nothing in the record on appeal that reasonably could lead this court to believe that at the time of its comment, the circuit court had conducted any legal research of its own and therefore was in a position to assess the legal strength of defense counsel's argument. In light of the record, it appears far more likely that the circuit court's comment addressed the passion or conviction with which defense counsel put forward his argument, not the circuit court's opinion of the legal merit of that argument.

¶ 22    Moreover, immediately after making the "powerful argument" comment, the circuit court noted that although the prior convictions in this case were for two burglaries that occurred on the same date—December 5, 2008—the burglaries occurred at two separate locations, which meant that, ultimately, "they are separate and distinct offenses." The circuit court then further noted that defense counsel's argument was that because the defendant "pled at the same time, it should count as one offense," but the circuit court believed that the State's argument countering the defendant was "well-taken" based upon the organization and language of the statutes. The circuit court thereafter added: "This is an issue of statutory construction. It is a legal argument. I don't think the defense argument's well-taken." Thus, the circuit court soundly—and correctly—rejected defense counsel's meritless argument at trial, and did so again after conducting legal research to address the defendant's posttrial motion. Finally, even if at trial the circuit court did hold the subjective view, formed before conducting any research, that defense counsel made "a powerful

10

argument" from a legal point of view, that does not change the fact that there was no legal support for the argument, only binding precedent contrary to it, as discussed above. It also does not change the fact that after conducting legal research, the circuit court reiterated its earlier rejection of defense counsel's argument, without reiterating any belief that the argument was "a powerful" one. Thus, we are not persuaded by the State's reasoning with regard to this point.

¶ 23    In light of the foregoing, we now turn to the question of whether the defendant received the effective assistance of counsel under the circumstances of this case. As the defendant notes on appeal, under a traditional ineffective assistance of counsel analysis, a defendant must show both that counsel's performance was deficient, and that the defendant was prejudiced by that deficient performance. See, *e.g.*, *People v. Chandler*, 129 Ill. 2d 233, 242 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). As the Illinois Supreme Court held in *Chandler*, both prongs of the traditional *Strickland* test are met if defense counsel's strategy at trial is based upon a misunderstanding of the law, or a misunderstanding of the validity of a potential defense, that results in a situation where the trier of fact is left "with no choice but to convict." *Id.* at 248. The *Chandler* court further held that "[b]y failing to comprehend the law ***, counsel's strategy and actions amounted to no real defense at all," which meant that the State's case "was not subject to meaningful adversarial testing, and [the] defendant was deprived of a fair trial." *Id.* at 249. In this case, we agree with the defendant that he has met his *Strickland* burden because defense counsel, *inter alia*, staked the defendant's entire case on his meritless legal theory about the requirements of the armed habitual criminal statute, and when that doomed strategy failed, the circuit court had no choice but to convict the defendant.

¶ 24    We also agree with the defendant's first alternative argument, in which he notes that under a different line of cases, in situations in which defense counsel's errors are so profound and fundamental as to amount to a complete deprivation of the right to counsel, no showing of

11

prejudice is required, because such errors are structural ones that represent a "complete failure of a functioning adversarial trial process." In *People v. Dodson*, 331 Ill. App. 3d 187, 192 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)), this court recognized as much, noting that in rare cases "[w]here 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.' " The *Dodson* court held that the case before it—in which defense counsel at trial, *inter alia*, agreed to a State-drafted stipulation that contained nothing "that offered a rational trier of fact reason to discredit any of the State's evidence"—was "not a case where counsel made a series of demonstrable mistakes during the course of a truly adversarial criminal trial," but was instead "a trial that lacked any meaningful adversarial test of the prosecution's case," and wherein "[t]he decision to promote a bench trial and the decision to sign the State-drafted stipulation virtually ensured a conviction and spared the prosecution those hardships that usually accompany the existence of a trained and skilled adversary trying to defeat its objectives." *Id.* at 191-93. The court further held that "[t]he stipulated bench trial provided a process to judgment that lost its character as a confrontation between adversaries," and devolved into "the functional equivalent of a guilty plea without the procedural due process safeguards required by" existing precedent for such proceedings. *Id.* at 193.

¶ 25 We conclude that pursuant to *Dodson* and *Cronic*, even if we were to assume, *arguendo*, that the defendant failed to demonstrate prejudice in this case under a traditional *Strickland* ineffective assistance of counsel analysis, we would still agree that he is entitled to a new trial because in this case defense counsel, *inter alia*, staked the defendant's entire case on a meritless legal theory, in no way held the State to its burden of proof, and otherwise acted in a manner that led to a complete failure of a functioning adversarial trial process. As defense counsel put it, his argument was a legal one, not a factual one, and because that legal argument was completely

12

without merit, defense counsel's entire strategy amounted to no defense at all, and ensured that the defendant would be convicted. Moreover, in exchange for pursuing this doomed strategy, the defendant did not receive any tangible benefit—such as a sentencing cap—from the State at all. We conclude in this case—as did the *Dodson* court with regard to the case before it—that "[s]ound trial strategy should be made of sterner stuff." 331 Ill. App. 3d at 194 (citing *People v. Moore*, 279 Ill. App. 3d 152, 159 (1996)).

¶ 26                                    III. CONCLUSION

¶ 27    For the foregoing reasons, we reverse the defendant's conviction and sentence for the offense of armed habitual criminal and remand for further proceedings.


¶ 28    Reversed and remanded.