THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROGER F. MOORE, Defendant-Appellant.

Fifth District    No. 5—94—0037

Opinion filed March 29, 1996.

Daniel M. Kirwan and Janet Gandy Fowler, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Terry M. Green, State's Attorney, of Benton (Norbert J. Goetten, Stephen E. Norris, and J. Stephen Bennett, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KUEHN delivered the opinion of the court:

Defendant, Roger F. Moore, was convicted of driving under the influence of alcohol (DUI) after a jury trial in the circuit court of Franklin County. 625 ILCS 5/11—501 (West 1992). He was sentenced to two years' probation, 14 days of periodic imprisonment, and a $500 fine. Defendant appeals.

The defendant's trouble began on the evening of January 29, 1993, when Officer Glenn Faith (Faith) of the Secretary of State's office noticed the defendant's car remain stationary after a traffic signal turned green. Playing a hunch that the hesitation at the light was due to alcohol impairment, Faith followed the defendant. He noticed that the defendant's car lacked a front license plate and had a cracked windshield.

Faith followed the defendant's car to a nearby McDonald's restaurant parking lot. En route to McDonald's, Faith looked for, but saw no sign of, alcohol impairment in the defendant's manner of driving.

As soon as defendant and his family pulled onto the McDonald's parking lot, Faith confronted the defendant about his car. Faith immediately saw defendant's bloodshot eyes, smelled his alcohol-laden breath, and heard his slurred speech. Faith's senses confirmed his suspicion that defendant was driving under the influence of alcohol. He demanded to see defendant's performance of a series of field sobriety tests. The defendant's performance evidenced alcohol-like impairment.

Faith advised the defendant that he was under arrest for driving under the influence of alcohol. With consent, Faith searched the defendant's car and found an open can of Budweiser beer under defendant's seat. When Faith turned to confront the defendant with the discovery, he saw the defendant headed south in his flight to freedom. The defendant left his car, his wife, his daughter, and Officer Faith, Budweiser in hand, standing on the parking lot of McDonald's. It was approximately 10:30 p.m., January 29, 1993.

At 1:15 a.m., January 30, 1993, the defendant and his father walked into the West Frankfort police station. The defendant demanded a breathalyzer test, but Faith refused to administer one. Instead, the defendant was immediately placed under arrest. While the defendant was being booked, Officer Donald Watson (Watson) of the West Frankfort police department asked defendant why he ran. Defendant answered: "I was scared, I didn't want another DUI—so I just left. It was sort of stupid I know. I shouldn't have been driving. I should have had my wife driving."

Watson saw defendant's bloodshot eyes, smelled his alcohol-laden breath, and heard his slurred speech. At Faith's request, Watson administered a horizontal gaze nystagmus (HGN) test. The result mirrored Faith's HGN test result conducted earlier on the parking lot.

Sometime later, at 2:01 a.m., the defendant was told that he had a constitutional right to remain silent and that anything he said could be used against him. Defendant then refused to answer further questions.

The defendant challenges the sufficiency of the evidence upon which the guilty verdict is based. Our standard of review " 'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).

The defendant's guilt was as evident as the nose on his face—the nose that he could not locate with his finger that night. His guilt was reflected in his bloodshot eyes as they failed to smoothly pursue a pen passed in front of them. His slurred speech emanating from breath that reeked of alcohol spoke of his guilt. He could not stand on one foot or walk a straight line. In a word, his performance was staggering.

The defendant's motor skills evidenced impairment. His judgment was impaired as well. When Faith turned his attention to a

search of the car, when discovery of a concealed can of beer was imminent, defendant broke and ran, abandoning his car, his wife, and his daughter. His exit into the night was an action that befit a guilty, and sodden, state of mind.

The defendant later admitted that he ran in fear of *"another* DUI conviction." (Emphasis added.) He also lamented that his wife should have been driving that night.

Defendant urges that, absent evidence of erratic driving, the State fails in its burden of establishing the elements of the crime. Officer Faith witnessed the defendant driving his car. Thereafter, evidence pointed to the fact that the defendant was under the influence of alcohol. Faith and Watson formed opinions supported by the actions they observed and the tests they conducted. The defendant did not need to drive into a ditch or drive the wrong way on an interstate (or engage in any other gross misdeed in the operation of his car) for the State to prove he was in no condition to drive. Clearly, the guilty verdict was the product of a rational jury, reaching a rational decision based upon the evidence presented. The evidence was sufficient to support the verdict.

It is undeniable that certain evidence upon which this verdict rests could have been successfully challenged and never considered by the jury. The defendant's damaging statements to Watson were subject to suppression, being the product of an in-custody interrogation of the defendant without a knowing waiver of constitutional rights. *Miranda v. Arizona*, 384 U.S. 436, 467-72, 16 L. Ed. 2d 694, 719-22, 86 S. Ct. 1602, 1624-27 (1966). Both HGN tests were admitted without proof of the proper foundation. See *People v. Buening*, 229 Ill. App. 3d 538, 546, 592 N.E.2d 1222, 1227 (1992), *appeal denied*, 146 Ill. 2d 634, 602 N.E.2d 460 (1992). The prosecutor, in cross-examining the defendant, repeatedly asked his opinion of the credibility of other witnesses. Defendant was improperly compelled to opine that police officers had lied to the jury. See *People v. Kokoraleis*, 132 Ill. 2d 235, 264, 547 N.E.2d 202, 216 (1989), *cert. denied*, 497 U.S. 1032, 111 L. Ed. 2d 804, 110 S. Ct. 3296 (1990). The defendant's propensity for crime was introduced when he was improperly cross-examined about an earlier conviction for criminal damage to property. See *People v. Williams*, 161 Ill. 2d 1, 39, 641 N.E.2d 296, 312 (1994); *People v. Montgomery*, 47 Ill. 2d 510, 515, 268 N.E.2d 695, 698 (1971). And finally, Faith commented on the defendant's silence after *Miranda* rights were administered. Faith inferred that the defendant's exercise of his rights constituted evidence of guilt—a decision to conceal damaging information about his activities that night. *Doyle v. Ohio*, 426 U.S. 610, 618, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245 (1976).

The defendant decries his lawyer's representation. His condemnation seeks our review of errors in the legal assistance received from appointed counsel. Defendant claims that counsel's performance was deficient to a point of undermining the trial process that produced conviction.

The State urges us to ignore the professional errors raised on appeal. It points to defendant's *pro se* post-trial motion and argues waiver of the issue. It asserts that the general claim of ineffective assistance of counsel found in defendant's post-trial motion did not articulate, and therefore did not preserve, the various professional errors now raised on appeal. *People v. Enoch*, 122 Ill. 2d 176, 189-90, 522 N.E.2d 1124, 1129-30 (1988).

This claim raises the issue of the deprivation of a constitutional right essential to the basic fairness of adversarial proceedings. Absent the assistance of a "reasonably effective" lawyer, an accused stands defenseless in the presence of unconstrained prosecutorial power. Effective assistance of counsel functions to assure prosecutions constrained by rules of evidence and procedure designed to assure fairness. A claim of ineffective assistance of counsel, drafted by a disenchanted *pro se* defendant who casts off and blames his lawyer for receipt of an unfair trial, can find refuge from waiver in the plain error doctrine. 134 Ill. 2d R. 615; *People v. Rainwater*, 207 Ill. App. 3d 1096, 1099-1100, 566 N.E.2d 822, 824 (1991). The doctrine takes note of errors and defects affecting substantial rights. It draws purpose and meaning from a case such as this. A prosecution that pursued an unfettered path of misconduct on its way to verdict should not go unaddressed. We consider the error substantial and the doctrine appropriate where defense counsel, the keeper of the gate, failed to defend and protect the integrity of the path to verdict; where defense counsel allowed his client to fall prey to prosecutorial excess and absorb penalty for exercise of his constitutional rights. In fact, this case graphically demonstrates that the rules of adversarial trial combat preserve fairness only if the adversary is required to abide by those rules. We will address the merits of the claim.

The sixth amendment to the United States Constitution grants a criminal defendant the right to "Assistance of Counsel for his defence." U.S. Const., amend. VI. The Supreme Court has held that the right to assistance of counsel is the right to "*effective* assistance of competent counsel." (Emphasis added.) *McMann v. Richardson*, 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1449 (1970).

The standard for evaluating counsel's performance in a criminal case was developed and articulated in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). The

*Strickland* standard was adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984), *cert. denied*, 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061 (1985).

The *Strickland* standard has two prongs. First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense.

"[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. A defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Counsel's conduct is afforded a strong presumption that it falls within a range of reasonable professional assistance and that challenged actions constituted sound trial strategy. *Albanese*, 104 Ill. 2d at 526, 473 N.E.2d at 1255, citing *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065. Counsel's representation must fall below an objective standard of reasonableness. *Albanese*, 104 Ill. 2d at 525, 473 N.E.2d at 1255, citing *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

The absence of challenge to all that was objectionable in this case speaks of particularly egregious lawyering. When Faith told this jury that he read the defendant his rights and the defendant subsequently refused to answer questions about his activities that night, a reasonably effective lawyer would have objected and requested a mistrial. Comment on the exercise of the right to remain silent may serve as the sole basis for the reversal of a conviction. *Doyle*, 426 U.S. at 619, 49 L. Ed. 2d at 99, 96 S. Ct. at 2245. We cannot construe the unobjected-to admission of this testimony as strategy rather than mistake.

A reasonably effective lawyer would have challenged the use of defendant's statements to Watson. The State does not dispute the existence of a *Miranda* violation. Rather, it argues that allowing the statement's use was tactically the least damaging way to justify the defendant's flight.

Watson's failure to obtain a knowing waiver of the right against self-incrimination provided an undisputed basis for suppressing the defendant's statement. By asserting the defendant's unknowing waiver, counsel could have prevented highly incriminating evidence from being considered.

The jury could have inferred knowledge of guilt from the defendant's flight. But the defendant's statement, singularly the

most damning evidence in the case, removed any hope of innocent interpretation. The defendant's stated reason for flight confirmed, in the worst of ways, the prosecution's theory of flight. The defendant's reason for running was to avoid *another* DUI conviction. Defendant not only confirmed his knowledge of guilt, he conveyed his propensity for committing the crime. In addition, he conveyed his knowledge that he had no business behind the wheel that night by admitting that his wife should have been driving.

The statement, contrary to the State's assertion, did not provide, as a matter of strategy, the "least damaging justification" for the defendant's flight. The statement provided no justification at all. The statement merely provided defendant's guilt-ridden reason for running. We cannot find a strategy that favors the defendant in allowing his statement to be used against him. Given its obvious devastating effect on his presumption of innocence, a reasonably effective lawyer would have removed it from the State's case.

A reasonably effective lawyer would have challenged the State's use of a prior felony conviction for criminal damage to property before calling the defendant to the witness stand. Counsel allowed the prior conviction to be introduced, without *in limine* challenge or timely objection of any kind. The prosecutor was allowed to make the defendant's prior felony conviction a part of its unobjected-to cross-examination of the defendant. Apart from the improper method employed, the supreme court's recent analysis of the *Montgomery* rule in *People v. Williams*, 161 Ill. 2d 1, 641 N.E.2d 296 (1994), suggests that use of the defendant's prior felony for impeachment was improper.

The State tenders a curious argument. Since the judicial trend at the time of the defendant's trial was to allow impeachment with virtually all prior felony convictions, and since *Williams* had yet to address that trend by revisiting and reaffirming the principles of cautious use enunciated in *Montgomery*, the State asserts that any challenge would have been to no avail. For purposes of our decision, we are willing to presume that the trial court would have properly applied the principles of the *Montgomery* rule, reiterated in *Williams*, and barred the use of a prior felony that had little bearing on defendant's credibility as a witness. In any event, a shrug of the shoulders in anticipation of an erroneous ruling as part of a trend of erroneous rulings is a course of strategy seldom engaged in by reasonably effective lawyers.

Finally, the prosecutor was allowed to repeatedly query the accused on the credibility of police officers and allowed to elicit unqualified damaging opinions about HGN tests. The prosecution's unfet-

tered march to conviction with improper tactics and inadmissible evidence is difficult to equate with a vulpine defense plan.

Considering all of the circumstances, indulged in with a strong presumption favoring reasonable professional assistance, we cannot construe the challenged performance of counsel as a matter of sound trial strategy. Sound trial strategy is made of sterner stuff. It embraces the use of established rules of evidence and procedure to avoid, when possible, the admission of incriminating statements, harmful opinions, and prejudicial facts. Counsel's performance was not objectively reasonable. The defendant did not receive reasonably effective assistance of counsel.

To succeed on a sixth amendment claim of ineffective assistance of counsel, the defendant must also show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69. A reasonable probability means a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Under the *Strickland-Albanese* test for constitutional deprivation, we are constrained from providing a defendant relief solely upon the basis of his attorney's level of performance. The test measures the performance against its potential effect on the outcome of the case. Therefore, even where counsel's mistakes are egregious, we are required to examine them in the context of all of the evidence in the case to determine whether they create a reasonable probability of a different result.

The State asserts that the defendant did not suffer prejudice as a result of trial counsel's errors. The State discounts the evidence tainted by those errors and correctly postures a sufficient evidentiary basis upon which to convict. The State notes, in terms of the sufficiency of evidence, that an arresting officer's testimony can sustain a conviction for driving under the influence of alcohol. *People v. Wiebler*, 266 Ill. App. 3d 336, 339-40, 640 N.E.2d 24, 27 (1994), citing *People v. Fowler*, 98 Ill. App. 3d 202, 204, 423 N.E.2d 1356, 1357 (1981). By contrast, in our case, the State offered the untainted testimony of two police officers that the defendant's eyes were bloodshot, his speech was slurred, and his breath smelled of alcohol. Officer Faith performed a series of field sobriety tests which the defendant failed. These tests, coupled with the other observations, provided a more-than-adequate basis for Faith to conclude that defendant was driving under the influence of alcohol.

The State offered Faith's untainted discovery of a cold can of

Budweiser spilling onto the floor under the defendant's car seat. One hand on the wheel and one hand on an open can of beer is no way to operate a motor vehicle, and such an inference logically flowed from Faith's discovery. At about the same time Faith was discovering this incriminating piece of evidence, the defendant was taking flight. Leaving his car, his wife, his child, and his unfinished can of Budweiser was an act that provided the State with a number of untainted negative inferences, not the least of which was alcohol-impaired thinking.

The obvious inference from flight—escape from arrest and prosecution for an offense he knew he had committed—was diminished by the defendant's appearance at the police station. While the defendant's demand for a breathalyzer test conveyed a message that the defendant stood ready to withstand a more definitive method of testing his sobriety, the message was clouded by close to a three-hour delay in his surrender. His flight, his lengthy disappearance, and his belated surrender combined to taint his demand. The escape facilitated delay which diminished the efficacy of a blood-alcohol test. The belated demand was ambiguous. It harbored a negative inference that the defendant's conduct constituted a ploy to manipulate the truth.

We agree with the State that sufficient evidence existed, unattributable to defense counsel's errors, to support the outcome in this case. But sufficiency of the evidence is not the touchstone for decision under *Strickland's* test of prejudice. A defendant need not demonstrate that after discounting the inculpatory evidence in light of counsel's errors, there would not have been enough evidence left to convict. The Supreme Court considered applying an outcome-determinative standard in *Strickland* and commented:

> "[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case. *** [This outcome-determinative] standard is not quite appropriate.
> ***
> *** [T]he appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution [citation] ***. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94, 80 L. Ed. 2d at 697-98, 104 S. Ct. at 2068.

The genesis of the standard for judging the prejudice necessary to elevate counsel's performance to a level of constitutional deprivation parroted the standard for judging materiality of undisclosed evidence

favorable to an accused. See *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963); *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976); *United States v. Bagley*, 473 U.S. 667, 87 L. Ed. 2d 481, 105 S. Ct. 3375 (1985). The Supreme Court recently revisited the *Agurs-Bagley* test of materiality adopted as the appropriate standard for prejudice in *Strickland. Kyles v. Whitley*, 514 U.S. 419, 131 L. Ed. 2d 490, 115 S. Ct. 1555 (1995). The Court's analysis offers guidance in the proper application of the *Strickland* standard of prejudice.

The Supreme Court reaffirmed its rejection of a materiality standard requiring the defendant to demonstrate that evidence, if disclosed, probably would have resulted in acquittal. *Kyles*, 514 U.S. at 434, 131 L. Ed. 2d at 506, 115 S. Ct. at 1565-66. At the same time, the Court reaffirmed that under *Strickland*, the standard for prejudice did not require a defendant to establish that the attorney's deficient performance more likely than not altered the outcome in the case. *Kyles*, 514 U.S. at 434, 131 L. Ed. 2d at 506, 115 S. Ct. at 1566. The Court revisited the language of the two standards in the context of the issue of materiality:

> "[The] touchstone of materiality is a *'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence*, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the Government's evidentiary suppression 'undermines confidence in the outcome of the trial.' "

(Emphasis added.) *Kyles*, 514 U.S. at 434, 131 L. Ed. 2d at 506, 115 S. Ct. at 1566, quoting *Bagley*, 473 U.S. at 678, 87 L. Ed. 2d at 491, 105 S. Ct. at 3381.

The Court emphasized that the standard is not a sufficiency-of-the-evidence test and noted:

> "A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. The *possibility of* an *acquittal* on a criminal charge *does not imply an insufficient evidentiary basis to convict.*" (Emphasis added.) *Kyles*, 514 U.S. at 434-35, 131 L. Ed. 2d at 506, 115 S. Ct. at 1566.

The *Strickland* standard for the determination of prejudice is subject to distortion if the evaluation focuses only on the evidence untouched by the professional errors of counsel. The standard falls prey to a seductive simplicity found in the mechanical search for untainted evidence to cleanse the prejudice by providing a sufficient independent evidentiary basis to convict. The prejudice referred to by

the Supreme Court is less mechanical and calls for review of the fundamental fairness of the proceeding as a whole, to determine whether, in light of the professional errors of counsel, the result was worthy of confidence. In this regard, the possibility of acquittal does not imply an insufficient evidentiary basis to convict.

The question is not whether the defendant would more likely than not have received a different result without the professional errors of counsel but whether, with their presence, he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. From our review of the proceedings as a whole, we find that the adversarial process designed to produce fair and just results broke down, and as a result of the errors of counsel, the verdict cannot be relied upon with confidence. Because the defendant was deprived of his constitutional right to effective assistance of counsel, we reverse and remand for a new trial.

Reversed and remanded.

GOLDENHERSH and WELCH, JJ. concur.