(text box: 1)
 NO. 5-01-0878

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Bond County.  

)

v. ) No. 00-CF-44

)

WILLARD MICHAEL FLETCHER, JR., ) Honorable

) John L. DeLaurenti, 

Defendant-Appellant. ) Judge, presiding.  

___________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

We are presented a case where defense counsel decided to ask his client to share with the jury his entire criminal history.  When the defendant forgot to include all of the particulars, the prosecutor guided him through every detail.  The jury learned everything about the defendant's sordid past, case by case, including the plea bargains that the defendant received along the way.  We are asked to overturn the new conviction that resulted, based upon a constitutional claim of ineffective assistance of counsel. 

We begin our discussion of what happened with a few simple observations.  A significant history of criminality could always provide considerable insight for jurors trying to determine someone's guilt or innocence.  However, we have long feared that providing proof of an accused's penchant for criminal behavior would control the decision-making process, resulting in convictions based upon past guilt instead of current evidence.  Because anyone charged with a crime is entitled to a trial that weighs whatever evidence exists of that crime, we guard against the use of past guilt to validate new accusations of criminal misconduct.  

While evidence of prior criminality cannot be admitted for the purpose of proving criminal propensity, it is allowed to be used, on occasion, after an accused testifies.  Whether or not a prior criminal conviction can be used requires a process of balancing its probative value as impeachment against any undue prejudice that it might interpose into a trial.  
People v. Montgomery
, 47 Ill. 2d 510, 515, 268 N.E.2d 695, 698 (1971).  Trial judges are the gatekeepers, charged with the responsibility of balancing interests and deciding upon the admission of this narrowly circumscribed form of proof.  
People v. Williams
, 161 Ill. 2d 1, 39, 641 N.E.2d 296, 312 (1994).  The limitations placed upon the admission of prior criminal convictions by the 
Montgomery
 rule, together with the methodology for its application, are a well-settled part of Illinois law.  Most criminal defense lawyers thoroughly understand, based upon the rule, what prosecutors can and cannot legitimately do with a prior criminal history. 

 The defendant stood trial for vehicular burglary and theft over $300.  The jury found him guilty of the theft and not guilty of the burglary.  The defendant now serves a five-year prison term, the sentence imposed upon the jury's finding of guilt.  

The State's case rested almost entirely upon the testimony of three accomplice witnesses, all of whom inculpated the defendant in order to curry favor from the State.  One of the accomplices actually told the jury that he took the witness stand in order to avoid being charged for his role in the crime.  

All of the stolen merchandise that forms the basis of the theft conviction was recovered from them or from people to whom they sold the stolen goods.  It is beyond dispute that the items purloined, and the proceeds from the sale of some of them, found their way into the hands of the State's key witnesses.  According to those witnesses, the defendant helped them procure the stolen merchandise.  They testified that he and another accomplice, who was absent from these proceedings, entered a Dodge pickup, bagged a host of electronic devices installed by its owner, and left the bag with them.    

The defendant testified.  He claimed to be a witness to the State's witnesses committing the burglary.  He insisted that he neither planned nor participated in the crime.  In order to bolster his disavowal of any guilt, he noted that he did not share in the crime's spoils.  

What happened during the last part of the defendant's direct examination and during cross-examination defies adequate description through paraphrase.  Here is what happened: "Q.  T.J., I got to ask you this question.  You been in trouble with the law before?

A.  Yes, sir.

Q.  Would you tell us about that?

A.  
Have a kind of extensive history
.

Q.  
Well, tell us about it.

* * *

A.  I'm sorry.  I have past run-ins with the law, juvenile and as–adult.  Most of them are criminal trespass because I am not allowed at the–the housing.

Q.  Okay.

A.  Unlawful consumptions.  And[] 
I had theft of a motor vehicle when I was 14. 

Q.
  When you were 14?

A.
  14 or 15
.

* * *

Q.  Okay.  Of those various charges, how many of those did you take to trial?

A.  None.

Q.  None?

A.  None.

Q.  Why not?

A.  I was guilty.

Q.  Why are you taking this one to trial?

A.  I'm not guilty."  (Emphasis added.)

This decidedly unique ploy of having the defendant share his extensive juvenile criminal history with the jury, including a delinquency adjudication based upon car theft, led to a line of uncurbed cross-examination that far surpasses it as a unique and rare piece of lawyering.  The jury heard the following:

"Q.  Mr. Potter asked you questions about your history, T.J.

A.  Yes, sir.

Q.  
You remember case 98-CF-25, T.J.?

A.  
What was it about?  I had a lot of cases.

Q.
  Felony [t]heft, subsequent offense.

A.  
Which one?

Q.  
It's a case that was bargained down to [m]isdemeanor [t]heft, T.J.

A.  You mean–what was theft–what was theft of?

Q.  You remember that occasion?

A.  I don't know all those numbers and words you all be [
sic
] saying.

THE COURT:  
Give him a victim.  He might remember
 that way if you got it.

MR.  SYBERT [assistant State's Attorney]:  Citgo Service Station, Mulberry Grove, T.J.

A.  Yes, sir, I remember that now.

Q.  You plead [
sic
] guilty to an [a]mended [c]harge of [m]isdemeanor [t]heft on June 16, 1998[,] correct? 

A.  Yes, sir.

Q.
  How about
 
98-CM-3, [t]heft under three hundred.
  You remember that one?

A.  
I am thinking.  That
 
was the liquor store?

Q.  
Scott's Package Liquor Store
.

A.  
Yes, sir.  Plead 
[
sic
]
 guilty to that too.

Q.  That would be your first theft.  That's why the other one was [t]heft subsequent offense[,] right?

A.  Yes, sir.

Q.  
But it was plead 
[
sic
]
 down to [m]isdemeanor from [f]elony?

A. 
 Mm...hmmm.

Q.  
Part of a bargain
.  
How about [c]ase [n]umber 98-CM-189
, two counts of [c]riminal [t]respass–excuse me, one count [c]riminal [t]respass to [s]tate[-][s]upported [land], one count of [o]bstructing [p]eace [o]fficer.  You remember that case?

A.  Yes, sir.

Q.  Convicted on both of those counts[,] correct?

A.  Plead [
sic
] out.  I was guilty.

Q.  That's conviction[,] isn't it T.J.?

A.  Mm...hmmm.

Q.
  How about case 98-CM-214, [t]respass?

A.  Yes, sir.

Q.  Criminal [t]respass to [s]tate[-][s]upported [l]and, plead [
sic
] guilty September 16, 1998?

A.  Yes, sir.

Q.  
Case
–
excuse me, case 2000-CM-16
, [t]respass to [s]tate[-][s]upported [l]and and [u]nlawful [c]onsumption of [a]lcohol by a [m]inor?

A.  Yes, sir.

Q.  Convictions entered on January 14, year 2000?

A.  (Indicates by nodding head.)

Q. 
 Case 99-CM-122, [c]riminal [t]respass to a [r]esidence?

A.
  Mm...hmmm.

Q.  
Two counts.  And[] another count of [u]nlawful [c]onsumption.  Convicted of all counts on September 2[], 1999?

A.  
Right.

Q.  
Criminal [t]respass to a [r]esidence[,] T.J., that's different than criminal [t]respass to [p]roperty[,] isn't it?

A.  
Mm...hmmm, it's a lot different
.

Q.
  In this case you entered people's homes[,] didn't you?

A.  Mm...hmmm.

MR. POTTER [the defendant's counsel]:  Your honor, this is getting 
a tad cumulative
.

MR. SYBERT:  Your honor, he opened the door to the history."  (Emphasis added.)

We are not sure whether any of the aforementioned evidence would have been heard by the jury, had defense counsel asked to have it excluded.  However, we trust that the existence of an extensive juvenile criminal record, with a delinquency adjudication based upon theft of a motor vehicle, is something that the trial judge would not have allowed the jury to hear.  So, too, the trial judge would have certainly barred any mention of misdemeanor criminal trespasses and, with such prohibition, would have avoided the impropriety of testing the defendant's knowledge of the difference in the degrees of culpability for a criminal trespass to property and his trespasses to other people's homes.  Under well-settled doctrine established decades ago, the defendant's misdemeanor theft convictions were the only evidence of prior criminality that the trial judge could have conceivably allowed into evidence.  See 
Montgomery
,  47 Ill. 2d at 515, 268 N.E.2d at 698.  We are confident that had he permitted their use for impeachment purposes, he would have required a certified copy of the convictions as the evidence admitted.  He would not have allowed the prosecutor to cross-examine the defendant about the details of those theft convictions or to imply that the defendant really committed felony offenses but escaped a conviction that properly reflected his evil propensity because he used plea bargaining to his advantage.  

The State concedes that only the evidence of the misdemeanor theft convictions was potentially admissible for use as impeachment.  Notwithstanding, the State argues that all of the other evidence of prior criminality was admitted as a part of a defense strategy to show how the defendant always pleads guilty when he is guilty of committing crimes.  This is the State's position:

" [C]ounsel's decision to bring out testimony concerning the defendant's past criminal history was a matter of strategy and, as such, is not subject to a claim of ineffectiveness.  In addition, once the defendant's counsel's strategy opened the door to questions concerning the defendant's past criminal history, counsel had no basis to object to the [S]tate's cross-examination of the defendant on the same subject.  Finally, the admission of past[-]crimes evidence was harmless."

 We will address the State's position sentence by sentence.

Counsel's Strategic Decision to Elicit Testimony of the Defendant's Past Criminal History

The State argues that the disclosure of the defendant's "extensive criminal history," including repeated bouts with underage drinking, numerous episodes of trampling state property, two uninvited entries into other people's homes, thefts from a gas station and a liquor store, a car theft at the ripe old age of 14, and obstructing policemen, disclosure of a criminal penchant seemingly undeterred by criminal prosecution and punishment, was a matter of trial strategy not subject to a claim of ineffective assistance of counsel.  

We often deny ineffective-assistance-of-counsel claims on the basis that the complained-of professional errors were simply a matter of trial strategies that failed to work.  In doing so, we operate under a presumption that criminal defense counsel engage in 
sound
 trial strategies.  
Strickland v. Washington
, 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694-95, 104 S. Ct. 2052, 2065 (1984).  The p
resumptive soundness of a lawyer's performance gives way to a finding of representation's deficiency only where no reasonably effective criminal defense attorney, confronting trial's circumstances, would engage in similar conduct.  
People v. Faulkner
, 292 Ill. App. 3d 391, 394, 686 N.E.2d 379, 382 (1997).  The constitution's guarantee of "assistance of counsel" calls for "reasonably effective assistance."  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Criminal defense attorneys must assist clients in a way that the constitution's guarantee of "assistance of counsel" contemplates.  The constitution contemplates assistance that engages evidentiary rules to shield an accused from a decision based upon unreliable evidence.  
People v. Moore
, 279 Ill. App. 3d 152, 159, 663 N.E.2d 490, 496 (1996).  It contemplates assistance that appreciates and understands legal principles applicable to the case.  
Faulkner
, 292 Ill. App. 3d at 394, 686 N.E.2d at 382.  It contemplates assistance ready to provide an adversarial check to a prosecutor's excessive endeavors.  
Moore
, 279 Ill. App. 3d at 158-59, 663 N.E.2d at 496.  In short, it contemplates more help from counsel than this defendant received. 

We choose to believe that neither defense counsel nor the prosecutor was fully aware of the law's restraints upon the use of prior criminality as evidence in a criminal case.  To the extent that we are wrong and that what happened during this defendant's testimony was a calculated ploy, we are neither willing to presume nor willing to declare such a strategy sound.  No reasonable defense lawyer would ask his client to tell the jury about an extensive history of criminality and have the client readily admit that he was guilty on every occasion, in order to convince the jury that he is innocent of a like crime because he denies his guilt instead of pleading guilty.  A reasonable defense lawyer would not want the jury to know about an extensive criminal history and would make sure that jurors were not told about the commission of car theft at the age of 14 or numerous misdemeanor offenses that did not bear on the question of honesty.  A reasonable defense lawyer would have found the prosecutor's efforts at detailing the defendant's many crimes a little more offensive than "a tad cumulative."

Given the well-settled nature of the limitations placed upon the use of prior convictions, we might have expected defense counsel to file a motion 
in limine
 prior to calling his client to the stand.  By so doing, he would have known, in advance of questioning, whether the State would be permitted to impeach with either one of the misdemeanor theft convictions.  There was a legitimate prospect under the circumstances of this case that the trial judge may have determined that undue prejudice outweighed the probative value of misdemeanor convictions.  Even if the judge allowed impeachment with both theft convictions, defense counsel could have then employed his strategy by bringing out only the two prior misdemeanor convictions and noting that both were resolved by a plea rather than a trial. 

The Defendant's Strategy Opened the Door to Similar Cross-Examination

The State argues that after the defendant testified that he had an extensive criminal history and counsel asked him to tell the jury about it, the door was open to reveal every aspect of that criminal history, including arrests, charges, plea bargaining, and convictions, and defense counsel had no basis to object.  

This part of the State's argument, if correct, only serves to confirm the egregiousness of the error in asking an open-ended question that sought the defendant's disclosure of his entire criminal history.  If counsel's strategy sanctified the line of questioning in which the prosecutor was engaged and if none of the questions were objectionable because the door to the defendant's history had been opened, counsel's ploy was doubly unsound. 

Admission of the Past-Crimes Evidence Produced Little, if Any, Harm

The State asks us to engage in harmless error analysis.  However, this is an ineffective-assistance-of-counsel claim, and once deficient lawyering is found, the harm inflicted because of any deficiency is tested under a different standard. 

To succeed on a sixth amendment claim of ineffective assistance of counsel, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  
People v. Lefler
, 294 Ill. App. 3d 305, 311, 689 N.E.2d 1209, 1214 (1998) (citing 
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068).  A reasonable probability means a probability sufficient to undermine confidence in trial's outcome.  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

It is not the defendant's burden to show that a different verdict was likely in the absence of counsel's shortcomings.  " '[The] touchstone *** is a "reasonable probability" of a different result, and the adjective is important.' "  (Emphasis omitted.)  
Moore
, 279 Ill. App. 3d at 161, 663 N.E.2d at 497 (quoting 
Kyles v. Whitley
, 514 U.S. 419, 434, 131 L. Ed. 2d 490, 506, 115 S. Ct. 1555, 1566 (1995)).  The question is not whether the defendant would more likely than not have received a different result without the professional errors of counsel, but whether, with their presence, he received a fair trial.  
Lefler
, 294 Ill. App. 3d at 312, 689 N.E.2d at 1214.  In this context, a fair trial is understood as a trial resulting in a verdict worthy of confidence.  
Moore
, 279 Ill. App. 3d at 161-62, 663 N.E.2d at 498.

"Our inquiry thus calls for more than a mechanical discount of the evidence improperly admitted to determine if other unaffected evidence sufficient to convict remains.  Rather, we must evaluate all of the evidence presented at trial and decide whether it is reasonable to conclude that a different result was plausible in the absence of the deficient representation received."  
Lefler
, 294 Ill. App. 3d at 312, 689 N.E.2d at 1214.

Since it was within the province of the trial judge's discretion to have allowed impeachment with two misdemeanor theft convictions, we will assume, for the sake of our analysis, that the State would have been able to submit two certified copies of the prior convictions to impeach the defendant.  Had that happened, the jury would still have learned that the defendant had a history of stealing.  What the jury would not have known is that the defendant had engaged in a continuous course of criminal behavior from the age of 14 up to the time that he was charged with this offense.

Almost all of the State's evidence of guilt was evidence that needed to be viewed with great caution, made suspect by who was offering the guilty accusation.  We think it particularly so when the accomplice testimony is offered by individuals who are not charged with anything, despite having been caught in possession of all of the stolen merchandise.  Each of the State's three witnesses had a powerful motive to lie, if necessary, in order to assist the State in its desire to convict the defendant of burglary and theft.  It would not be unfair, given the circumstances of this case, to conclude that the jury identified with the State's willingness to let more culpable participants go free in order to finally punish the defendant for all of his criminality.  The prosecutor sent a clear message during his cross-examination that the defendant had received undeserved lenient treatment in the past, plea bargaining his felonious guilt down to lesser crimes.  

The State was at a loss to explain why the defendant would take the risk associated with breaking into an unattended vehicle but not share in the gain derived from taking that risk.  The absence of motive was cured considerably when the State was able to expose the defendant as an individual who routinely engaged in unabashed criminal behavior.  The jury learned two things from the improperly admitted evidence.  First, the defendant was used to taking the risks inherent in criminal wrongdoing.  Second, the defendant had been so coddled by the criminal justice system that he did not view stealing as a risky enterprise.  The jury received a portrait of the defendant that made his gratuitous participation in the burglary understandable.  His ilk made him capable of breaking into a vehicle and stealing its contents on a lark.

Overall, the evidence offered to convict the defendant was anything but overwhelming.  The fourth accomplice, whom the three witness accomplices targeted as the defendant's assistant in the break-in, did not testify.  The case boiled down to the credibility of four witnesses–three State witnesses, who blamed the defendant, and the defendant, who blamed the three witnesses.  Curiously, had the jury taken the State's witnesses at their word, they would never have acquitted the defendant of burglary.  Indeed, it is somewhat inexplicable that they could split their verdicts like they did.

Certainly, the defendant's credibility would have been damaged by the admission of evidence of two prior misdemeanor theft convictions.  The State may well have convicted him without proving his long history of, and propensity for, criminality.  Notwithstanding, we conclude that a reasonable probability exists that the jury may have reached a different result in the absence of the professional error that led to that proof.  From our review of the proceedings as a whole, we find that the adversarial process designed to ensure fair and just results broke down, and because of counsel's mistake, the verdict cannot be relied upon with confidence.  Because the defendant was deprived of his constitutional right to the effective assistance of counsel, we reverse and remand for a new trial.

Finally, the defendant claims that the trial court erred in ordering him to reimburse his public defender without the court conducting the requisite hearing pursuant to section 113-3.1(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-3.1(a) (West 1998)).  See 
People v. Love
, 177 Ill. 2d 550, 555-60, 687 N.E.2d 32, 35-37 (1997).  The State concedes the issue.  Accordingly, we vacate the order of reimbursement and remand this case for the requisite statutory hearing.

Reversed; order vacated; cause remanded.

HOPKINS and DONOVAN, JJ., concur.

NO. 5-01-0878

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Bond County.  

)

v. ) No. 00-CF-44

)

WILLARD MICHAEL FLETCHER, JR., ) Honorable

) Ralph J. Mendelsohn, 

Defendant-Appellant. ) Judge, presiding.  

___________________________________________________________________________

Opinion Filed
: November 20, 2002

___________________________________________________________________________

Justices
: Honorable Clyde L. Kuehn, J.

Honorable Terrence J. Hopkins, J.

Honorable James K. Donovan, J.

Concur

___________________________________________________________________________

Attorneys
 Daniel M. Kirwan, Deputy Defender, Dan W. Evers, Assistant 

for
 Defender, Office of the State Appellate Defender, 730 E. Illinois

Appellant
 Hwy. 15, P.O. Box 2430, Mt. Vernon, IL  62864-0047

___________________________________________________________________________

Attorneys
 Hon. Chris Bauer, State's Attorney, Bond County Courthouse, 

for
 Greenville, IL  62246; Norbert J. Goetten, Director, Stephen E. 

Appellee
 Norris, Deputy Director, T. David Purcell, Staff Attorney, Office

of the State's Attorneys Appellate Prosecutor, 730 E. Illinois Hwy. 15, P.O. Box 2249, Mt. Vernon, IL  62864

___________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 11/20/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.