2021 IL App (2d) 190357-U
No. 2-19-0357
Order filed May 11, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-1169 |
| FREDERICK HAMPTON, | ) ) ) | Honorable Donald M. Tegeler Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant did not establish that his counsel was ineffective at his trial on possession-with-intent-to-deliver charges when counsel opened the door to previously-barred testimony from a police officer that the area where he stopped defendant for a traffic infraction had a high degree of drug activity. There was no prejudice to defendant, because the officer's testimony was consistent with the defense's theory that the officer had no basis—apart from defendant's circuitous driving in the area—to believe that defendant was involved in drug activity, and there was abundant other evidence that defendant intended to deliver the drugs that were found in his possession during the traffic stop.

¶ 2    Following a jury trial, defendant, Frederick Hampton, was convicted of possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2018)). He appeals,

contending that defense counsel was ineffective when his cross-examination of a State witness opened the door to prejudicial opinion evidence that had previously been barred. Because that testimony did not prejudice defendant, we affirm.

¶ 3                                                    I. BACKGROUND

¶ 4      Defendant was charged following a traffic stop in Aurora. Before trial, defense counsel moved *in limine* to bar officer Steven Pacenti from opining that the area in Aurora where he observed defendant was a " 'very active location for narcotics sales.' " Counsel asserted that the State had not disclosed any discovery concerning that area, that there was "nothing to substantiate or corroborate these opinions," and that allowing the officer to testify to those opinions would prejudice defendant and deprive him of a fair trial. The trial court granted the motion after the prosecutor stated that he did not intend to elicit such opinions unless the defense opened the door.

¶ 5      In his opening statement, defense counsel told the jury that the case was about "snap judgments" and "knee-jerk reactions." Counsel contended that Pacenti, having seen defendant's car driving around Aurora in the early morning hours, "convinced himself that *** this person in the car was dealing drugs." Despite "following it around and not seeing a single transaction," Pacenti positioned himself to observe a traffic violation so that he could search the car for drugs.

¶ 6      Pacenti testified that on June 6, 2018, he was on patrol in a marked squad car when he saw a gray Toyota traveling southbound on South LaSalle Street go through a stop sign at the intersection with Clark Street without coming to a complete stop. He could not see the stop line because his vision was blocked by a recycling container, but he was familiar with the intersection and knew where the stop line was.

¶ 7      Pacenti stopped the Toyota, which defendant was driving. Defendant was yelling at a passenger, Tammy Wagner, telling her not to talk to the officer.

¶ 8    Defendant rolled up the front passenger side window as he continued arguing with Wagner. At one point, defendant reached with his left hand toward the bottom of the front left side of his seat. Wagner eventually complied with Pacenti's request to get out of the car. As she did so, defendant attempted to close the door behind her. Pacenti also asked defendant repeatedly to exit the vehicle because he was concerned about what defendant had placed under the seat, but defendant did not immediately comply.

¶ 9    The prosecutor played Pacenti's dashcam video. Pacenti testified that the video showed him arresting defendant for obstructing a police officer after he refused to comply with orders to get out of the car. Searching defendant incident to his arrest, Pacenti found in defendant's sweatshirt pocket a small plastic container with a lid. Inside were three rock-like substances, each wrapped in a knotted plastic bag.

¶ 10   Pacenti searched the car and found a "medium-sized" knotted plastic bag with chunks of a rock-like substance underneath the front left of the driver's seat, near where he had seen defendant reach earlier. In a cell phone case in the center console, Pacenti found $195 in small bills.

¶ 11   Officers found Wagner's purse inside the Toyota. It contained a prescription bottle and a glass smoking device. Wagner was then arrested for possession of drug paraphernalia.

¶ 12   On cross-examination, defense counsel questioned Pacenti about his observation of defendant's Toyota. Pacenti testified that he saw the car at 12:45 a.m. parked at 101 South LaSalle Street, across from Taqueria Durango. Defendant pulled away and headed north on South LaSalle Street without committing any apparent traffic violations. Defendant turned onto East Galena Boulevard and stopped next to the curb. Pacenti then pulled away and drove to West Park Place and East Galena Boulevard. Pacenti saw defendant's Toyota again at the intersection of Lincoln Avenue and East Galena Boulevard, where he began following it again.

¶ 13    Defense counsel questioned Pacenti as follows:

> "Q. Was there any sign of anything illegal going on?
>
> A. At that point right there?
>
> Q. Yes.
>
> A. No.
>
> Q. Now, at that point when you were behind the Toyota going south on Lincoln you thought this car was involved with dealing drugs?
>
> A. Yes."

¶ 14    Pacenti continued to follow the Toyota.  It returned to South LaSalle Street, near Taqueria Durango, and stopped again.  At that point, Pacenti decided to position himself to observe a traffic violation.  Pacenti testified that one reason he suspected that the driver of the car was involved in drug dealing was that he took steps to avoid detection, but Pacenti reaffirmed that he did not directly witness any criminal conduct.

¶ 15    At the conclusion of cross-examination, the prosecutor argued that defense counsel had opened the door to questioning about Pacenti's opinion that the area where defendant stopped was known for drug dealing.  In response, defense counsel said, "They still haven't disclosed [*sic*] basis of his opinion."  The court ruled that the defense had opened the door to the previously barred evidence about the character of the area as a hot spot for drug dealing.

¶ 16    On redirect, Pacenti testified that he had been patrolling the area around 101 South LaSalle Street and 209 East Galena Boulevard for more than nine years and was aware "that they're very high narcotic trafficking areas."  Asked for specifics, Pacenti said that he had made drug-related arrests in those areas, had encountered numerous known drug addicts congregating in those areas,

and "[had] been told by people [he] dealt with on the streets." At that point, the trial court sustained a defense objection, presumably based on hearsay.

¶ 17    Pacenti said that when he saw defendant's car pull away from 101 South LaSalle Street the first time, he did not think much of it. He said that at one point he saw a female approach defendant's car.

¶ 18    James Coglianese, a forensic scientist, testified that the substances recovered from defendant's car tested positive for cocaine. Christopher Converse, an Aurora narcotics investigator, testified as an expert witness. He opined that, based on his review of the evidence, the drugs were possessed with the intent to deliver them. He based his conclusion on (1) the packaging and location of the drugs (smaller individual quantities on defendant's person, for quick sales, plus a larger quantity kept separate for safekeeping); (2) the overall quantity of the drugs, which was inconsistent with personal use; and (3) the presence of cash.

¶ 19    Defendant testified that he and Wagner were eating at Taqueria Durango. He paid for the food with money he had withdrawn from an ATM. He and Wagner were arguing because she would not stop drinking in his vehicle. He started driving back to his home in Kankakee but drove in a loop, ending up back at Taqueria Durango. He pulled over to continue the argument, at which point a police officer pulled up behind the vehicle.

¶ 20    The jury found defendant guilty. Defense counsel filed a posttrial motion in which he argued, *inter alia*, that "[t]he Court erred by allowing Officer Pacenti to testify the area where he stopped and arrested Hampton was a 'high drug area[,]' where the [S]tate failed to disclose anything in discovery to corroborate this opinion."

¶ 21    Before sentencing, defendant filed a *pro se* motion alleging that defense counsel was ineffective. Asked for specifics, defendant said that counsel had not investigated the case and

specifically refused to go to the scene. Counsel responded that he had personally gone to the scene and that "anything else that needed to be investigated *** was investigated thoroughly."

¶ 22 The trial court stated that it believed defense counsel's assertion that he had gone to the scene. Based on its observation of the trial, the court found that counsel was prepared for trial, and thus declined to appoint new counsel. Defendant then elected to proceed *pro se* at sentencing.

¶ 23 The trial court sentenced defendant to 18 years' imprisonment for possession with intent to deliver and six months for resisting a peace officer. Defendant timely appeals.

¶ 24                                    II. ANALYSIS

¶ 25 Defendant contends that defense counsel was ineffective. He argues that, after successfully moving to bar Pacenti's opinion that the neighborhood where defendant was arrested was rife with drug dealing, his cross-examination of Pacenti opened the door to that same evidence.

¶ 26 To establish a violation of the constitutional right to the effective assistance of counsel, a defendant must show that counsel's performance was objectively unreasonable and that the deficient performance so prejudiced the defense as to undermine confidence in the outcome of the proceedings or deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-89, 694 (1984). A defendant has the burden of demonstrating that counsel was ineffective. *People v. Ingram*, 382 Ill. App. 3d 997, 1006 (2008).

¶ 27 Under the first prong of *Strickland*, a defendant must overcome a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland,* 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Strategic choices made after a thorough investigation of the law and facts are virtually unchallengeable. *Id.* at 690.

¶ 28    To prove the prejudice prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A defendant's failure to make a requisite showing of either deficient performance or sufficient prejudice defeats an ineffective-assistance claim. *Id.* at 697.

¶ 29    We note that, although defendant filed a posttrial motion alleging that counsel was ineffective and the trial court conducted a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)), defendant did not raise the issue of whether counsel was ineffective for opening the door to Pacenti's opinion. While we do not hold that defendant forfeited the issue by failing to raise it *pro se*, we do not have the benefit of a full understanding of defense counsel's trial strategy. Based on the motion *in limine*, counsel's response to the prosecutor's suggestion that he had opened the door to questioning about Pacenti's opinions, and the posttrial motion that counsel filed, it appears that counsel's primary concern was that the State had not disclosed the basis of Pacenti's opinion. While the motion *in limine* goes on to argue that the opinion would prejudice defendant, it stops short of contending that the opinion was inadmissible. On appeal, defendant cites no case holding that such an opinion is substantively inadmissible (assuming a proper foundation). Nor does defendant complain that he was prejudiced by the State's failure to include in its pretrial disclosures the basis of Pacenti's opinion.

¶ 30    Thus, defendant's contention amounts to one that counsel, having secured the exclusion of the evidence (regardless of the reason that exclusion was sought), was ineffective for opening the door to that same evidence. Regardless of whether this was a reasonable trial strategy, we conclude that defendant was not prejudiced. See *People v. Erickson,* 161 Ill. 2d 82, 90 (1994) (if ineffective-assistance claim can be disposed of on basis that defendant did not suffer sufficient prejudice, court need not consider whether counsel's performance was deficient).

¶ 31    Pacenti's opinion was not inconsistent with the defense theory that Pacenti made a "snap judgment" that defendant was dealing drugs and contrived to find evidence to support his conclusion.  Indeed, Pacenti's opinion may even have supported the defense's theory.  Without evidence that Pacenti believed the neighborhood was rife with drug dealing, the jury could find no logical reason for him to suspect defendant, given his testimony that he did not see defendant do anything illegal before running the stop sign.  The jury would have been left with the impression that Pacenti simply picked out defendant's car at random.  Pacenti's opinion thus arguably lent credence to the defense theory that he saw defendant driving circuitously around a high-crime area and jumped to the conclusion that he was involved in drug dealing.

¶ 32    In any event, contrary to defendant's contention, the other evidence that defendant intended to distribute the drugs was strong.  Defendant admittedly possessed a substantial amount of crack cocaine and a sizeable amount of cash in small denominations.  Converse opined, based on the amount of drugs, their packaging and location, and the presence of cash nearby, that defendant intended to distribute the drugs.  Conversely, Converse did not mention Pacenti's opinion about the character of the neighborhood as a basis for his opinion.  It is unlikely the jury disregarded Converse's expert opinion and convicted defendant merely because he happened to be in a neighborhood with a reputation for drug activity.

¶ 33    In the cases defendant cites where ineffective assistance was found, the attorneys opened the door to, or themselves elicited, evidence extremely damaging to their clients' cases.  In *People v. Jackson*, 318 Ill. App. 3d 321, 328 (2000), defense counsel elicited testimony about an element of the charged offense that the State had not proven.  In *People v. Fletcher* 335 Ill. App. 3d 447, 453-56 (2002), defense counsel elicited testimony about his client's extensive criminal history that would otherwise have been inadmissible.  In *People v. Orta*, 361 Ill. App. 3d 342, 346-47 (2005),

defense counsel elicited testimony about other drug transactions involving his client. And in *People v. Bailey*, 374 Ill. App. 3d 608, 614-15 (2007), defense counsel elicited damaging testimony the State had not presented connecting the defendant to the crime. By contrast, in *People v. Rosemond*, 339 Ill. App. 3d 51, 66 (2003), the defendant did not establish ineffective assistance where the testimony counsel elicited was essentially cumulative to other evidence, including the defendant's confession. Here, similar to *Rosemond*, the evidence in question was at most additional circumstantial evidence of an element of the offense that the State proved by other evidence.

¶ 34                                III. CONCLUSION

¶ 35    The judgment of the circuit court of Kane County is affirmed.

¶ 36    Affirmed.